ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 1 9 2013

JAMES N. HATTEN, Clerk
By: _____ Clerk
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

VANCE R. JOHNSON,     /v      *

     *   CIVIL ACTION

     **Plaintiff,**      *

v.      *   FILE NO. **1: 13-CV-0524**

     *

     *   **JURY TRIAL**   **RWS**

SHERIFF R.L. "BUTCH" CONWAY,      *

C. LUCAS (SO#429 SGT. "LUCAS"),      *   **DEMANDED**

CHRISTOPHER REVELS (SO#692),      *

ROBERT BAILEY (SO#893),      *

TOCHI DAVIS (SO#1145),      *

CORIZON MEDICAL SERVICES INC. ("CMS"), *

SHANTE SIMS (CMS DIRECTOR OF NURSES) *

M.E. CAMPBELL (CMS)"SUPV" LPN-NURSES)*

SUE FAJARADO ("CMS" LPN-NURSE),      *

LAKEESHA SAINSBURY ("CMS" NURSE),      *

DAVID S. LIPSCOMB (ATTORNEY),      *

LUCAS O. HARSH, (ATTORNEY)      *

     **Defendants**. et al, Individual Capacities.

## COMPLAINT

COMES NOW Plaintiff Vance R. Johnson ("Plaintiff" or "Johnson"),

Pro se, and files this complaint against Defendants et al, in their Individual

Capacities, as follows:

1

## JURISDICTION AND VENUE

1.

Plaintiff files this action pursuant to 42 U.S.C. § 1981, 1983, 1985(3), 1986, 1988, (Bystander Liability), RICO, 18 U.S.C. § 1961 and asserts violations of the First, Fourth, Fifth, Seventh, Eighth, Ninth and Fourteenth Amendments of the United States Constitution; and the laws of the State of Georgia by the Defendants et al.

2.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1343, 1345 and 1367.

3.

This Court has pendant and supplemental jurisdiction over Plaintiff's state law claims since those claims arise from the same facts as Plaintiff's federal claims.

4.

Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and N.D.L.R. 3.1B(3) because a substantial part of the events and omissions giving rise to Plaintiff's claim occurred within this District and which is situated within the district divisional boundaries of the Atlanta Division of

the Northern District of Georgia, and because one or more of the parties reside within said district and division. All of the parties herein are subject to the jurisdiction of this Court.

## **PARTIES**

### 5.

Plaintiff is a citizen of the United States and a resident of this District.

### 6.

Defendant Sheriff R.L. "Butch" Conway ("Conway") is, and was at all times relevant to this Complaint, the Sheriff of Gwinnett County.

### 7.

Defendant C. Lucas (SO#429 "Lucas") is, and was at all times relevant to this Complaint, acting within the scope of said agency or employment that is subject to the jurisdiction of this Court. A Gwinnett County Deputy Sheriff Detention Officer working under and at the direction of Sheriff Conway.

### 8.

Defendant Christopher Revels (SO#692 "Revels") is, and was at all times relevant to this Complaint, a Gwinnett County Deputy Sheriff Detention Officer working under and at the direction of Sheriff Conway.

9.

Defendant Robert Bailey (SO#893 "Bailey") is, and was at all

times relevant to this Complaint, a Gwinnett County Deputy Sheriff

Detention Officer working under and at the direction of Sheriff Conway.

10.

Defendant Tochi Davis (SO#1145 "Davis") is, and was at all times

relevant to this Complaint, a Gwinnett County Deputy Sheriff Detention

Officer working under and at the direction of Sheriff Conway.

11.

Defendant Corizon, Inc., formerly known as Correctional Medical

Services, Inc. Corizon Correctional Medical Services Inc ("CMS" / "CCS")

is, and was at all times relevant to this Complaint, a Corizon Correctional

Medical Services Inc that provides medical services for Gwinnett County

Jail inmates and working with and at the direction of Sheriff Conway, Shante

Sims ("CMS" / "CCS") Director of Nurses for Gwinnett County Jail and

Rich Hallworth-Chief Executive Officer Corizon Correctional Medical

Services Inc. is a Missouri corporation having its principal place of business

at 12647 Olive Boulevard, St. Louis, Missouri 63141, which is subject to the

jurisdiction of this Court and which may be served with process by request

for waiver of service mailed to said address.

4

12.

Defendant Shante Sims ("CMS" / "CCS" Director of Nurses "Sims")
is, and was at all times relevant to this Complaint, a licensed nurse and an
agent or employee of Defendant Corizon, Inc. acting within the scope of said
agency or employment who is subject to the jurisdiction of this Court.
Corizon Correctional Medical Services Inc Director that supervise nurses
and provides medical services for Gwinnett County Jail inmates and
working under and at the direction of Sheriff Conway and Corizon
Correctional Medical Services Inc.

13.

Defendant M.E. Campbell (LPN-Nurse "Campbell") is, and was at all
times relevant to this Complaint, a licensed nurse and an agent or employee
of Defendant Corizon, Inc. acting within the scope of said agency or
employment who is subject to the jurisdiction of this Court. Corizon
Correctional Medical Services Inc ("CMS" / "CCS")- employee that
provides medical services for Gwinnett County Jail inmates and working
under and at the direction of Sheriff Conway, Shante Sims ("CMS" /
"CCS")-Director of Nurses for Gwinnett County Jail and Corizon
Correctional Medical Services Inc.

14.

Defendant Sue Fajarado (LPN-Nurse "Fajarado") is, and was at all times relevant to this Complaint, a licensed nurse and an agent or employee of Defendant Corizon, Inc. acting within the scope of said agency or employment who is subject to the jurisdiction of this Court. Corizon Correctional Medical Services Inc ("CMS")- employee that provides medical services for Gwinnett County Jail inmates and working under and at the direction of Sheriff Conway, Shante Sims ("CMS" / "CCS")-Director of Nurses for Gwinnett County Jail and Corizon Correctional Medical Services Inc.

15.

Defendant Lakeesha Sainsbury (Nurse –"Sainsbury") is, and was at all times relevant to this Complaint, a licensed nurse and an agent or employee of Defendant Corizon, Inc. acting within the scope of said agency or employment who is subject to the jurisdiction of this Court. Corizon Correctional Medical Services Inc ("CMS" / "CCS")- employee that provides medical services for Gwinnett County Jail inmates and working under and at the direction of Sheriff Conway, Shante Sims ("CMS" / "CCS")-Director of Nurses for Gwinnett County Jail and Corizon Correctional Medical Services Inc.

6

16.

Defendants David S. Lipscomb (Appointed Special Master by the Superior Court Gwinnett County, Serves on the State Bar of Georgia's Board of Governors, Serves on the State Bar of Georgia's Executive Committee, Serves as Chair of the State Bar Fee Arbitration Program, Serves as Vice Chairman of the State Bar Disciplinary Rules Committee, Appointed Special Master by the Georgia Supreme Court, Serves as a Special Assistant Attorney General, Serves as a Private Practice Lawyer and Serves as Chairman of the Gwinnett County Indigent Defense Governing Committee. "Lipscomb") is, and was at all times relevant to this Complaint, the Appointed Special Master by the Superior Court of Gwinnett County.

17.

Defendant Lucas O. Harsh, Attorney at Law 242 Culver Street, Suite 206 Lawrenceville, Ga 30046 is, and was at all times relevant to this Complaint, acting within the scope of said agency or employment who is subject to the jurisdiction of this Court.

18.

Defendant Sheriff R.L. "Butch" Conway is sued in his individual capacity, was acting under color of state law which deprived Plaintiff of his rights, privileges, or immunities secured by the Constitution or laws of the

7

United States. For acts performed pursuant to his authority as the duly
elected Sheriff of Gwinnett County, Georgia.

19.

Defendants C. Lucas, Christopher Revels, Robert Bailey and Tochi
Davis are sued in their individual capacities, was acting under color of state
law which deprived Plaintiff of his rights, privileges, or immunities secured
by the Constitution or laws of the United States. for acts performed pursuant
to their authority as law enforcement officers employed by the Gwinnett
County Sheriff's office.

20.

Defendants Corizon Correctional Medical Services Inc ("CMS" /
"CCS"), are sued in their official and individual capacities, was acting under
color of state law which deprived Plaintiff of his rights, privileges, or
immunities secured by the Constitution or laws of the United States. For acts
performed pursuant to their authority as Correctional Medical Services that
provides medical services for Gwinnett County Jail inmates and working
with and at the direction of Sheriff Conway, Shante Sims ("CMS" / "CCS")
Director of Nurses for Gwinnett County Jail and Rich Hallworth (CMS)-
Chief Executive Officer, Corizon Corporate Headquarters 105 Westpark
Drive, suite 200 Brentwood, TN 37027 and Corizon Operation Headquarters

8

12647 Olive Blvd St Louis, MO 63141. is a Missouri corporation having its principal place of business at 12647 Olive Boulevard, St. Louis, Missouri 63141, which is subject to the jurisdiction of this Court and which may be served with process by request for waiver of service mailed to said address.

21.

Defendants Shante Sims, M.E. Campbell, Sue Fajarado and Lakeesha Sainsbury are sued in their individual capacities, was acting under color of state law which deprived Plaintiff of his rights, privileges, or immunities secured by the Constitution or laws of the United States. For acts performed pursuant to their authority as Corizon Correctional Medical Services Inc. agent or employees of Defendant Corizon Medical Services Inc. that provides medical services for Gwinnett County Jail inmates and working under and at the direction of Sheriff Conway, Corizon Correctional Medical Services Inc and Rich Hallworth (CMS)-Chief Executive Officer, Corizon Corporate Headquarters 105 Westpark Drive, suite 200 Brentwood, TN 37027 and Corizon Operation Headquarters 12647 Olive Blvd St Louis, MO 63141.

22.

Defendants David S. Lipscomb et al. is sued in their individual capacity, was acting under color of state law which deprived Plaintiff of his rights, privileges, or immunities secured by the Constitution or laws of the United States. For acts performed pursuant to his authority as the Appointed Special Master by the Superior Court Gwinnett County, Serves on the State Bar of Georgia's Board of Governors, Serves on the State Bar of Georgia's Executive Committee, Serves as Chair of the State Bar Fee Arbitration Program, Serves as Vice Chairman of the State Bar Disciplinary Rules Committee, Appointed Special Master by the Georgia Supreme Court, Serves as a Special Assistant Attorney General, Serves as a Private Practice Lawyer and Serves as Chairman of the Gwinnett County Indigent Defense Governing Committee of Gwinnett County.

23.

Defendant Lucas O. Harsh is sued in his individual capacity, was acting under color of state law which deprived Plaintiff of his rights, privileges, or immunities secured by the Constitution or laws of the United States. For acts performed pursuant to his authority as an Attorney in Gwinnett County, Georgia and Officer of the Court.

## BACKGROUND

24.

I am a military veteran with an honorable discharge; I never been convicted of a crime of any kind. This matter has drastically tainted my life and record being a law-abiding citizen.

First Attorney David Lipscomb has told his former housekeeper my mother Rachel Johnson that he runs Gwinnett County Georgia, and no one else. I did not believe all the things my mother told me about what Attorney David Lipscomb told her about what goes on in Gwinnett County Georgia, (I do now). On Friday February 18, 2011 Plaintiff Vance R. Johnson, was arrested between 9:00 and 10:00 pm by the Gwinnett County Police Department, and taken to Gwinnett County Detention Center. On Saturday February 19th 2011 during the morning Plaintiff contacted his mother, Rachel Johnson and asked her to contact Attorney David Lipscomb her former employer for thirty plus years and ask him if he would get Plaintiff out of jail. Later that evening Plaintiff's mother informed Plaintiff that she had spoken with Attorney David Lipscomb, he said he would contact one of his friends Attorney Lucas Harsh that handles criminal matters that works in the same building as he and ask him to take the case. After Attorney David Lipscomb spoke with my mother regarding Plaintiff arrest. On February 19,

11

2011 at 1: 43 pm Attorney David Lipscomb sent a **bold** email to Attorney

Lucas Harsh stating that he did not like **"Black males/Plaintiff"**. On

Plaintiff's belief, Attorney David Lipscomb directed Defendant Sheriff

"Butch" Conway to conspire against Plaintiff and make sure that they single

out Plaintiff because he does not like **"Black males/Plaintiff".** On

Plaintiff's belief that Defendant Sheriff "Butch" Conway responded to

Defendant Attorney David Lipscomb by email having his Correction

Officers and Jail Nurses conspire against Plaintiff to ensure that detainee

Plaintiff, would remain incarcerated at the Gwinnett County Detention

Center by any means for as long as possible. The Gwinnett County Jail

Corrections Officers and Nurses, Malicious Acts, Fabrication of Evidence,

Video Evidence Destroyed, Threats, Lies, Conspiracy and use of Excessive

Physical Force to cause harm to Plaintiff, while Plaintiff was in the Gwinnett

County Jail. Required Plaintiff to seek medical attention from South Fulton

Medical Center Emergency Room, for the injuries Plaintiff received at the

Gwinnett County Detention Center. Plaintiff was diagnosed with shoulder

sprain, shoulder injury, rotator cuff sprain and rotator cuff injury. These

injuries also required Plaintiff to seek ongoing medical treatment from

Miguel Jimenez, M.D.(Surg/Ortho). <u>See Exhibit A</u>. **Medical Records.**

"If I was not a **Black male** would the Atlanta FBI, Special Agent in

Charge: Brian D. Lamkin standards be different in evaluating whether or not the allegations warrant an actual investigation, it's hard to conceal that fact." Because an investigation will show and did show that on February 24th 2011, the FBI were made aware of the allegations that happened on February 20, 2011 between 9:20pm and 9:30pm, and they were notified and came up to the Gwinnett County Jail. It will also show that FBI Atlanta, Attorney David Lipscomb, Sheriff "Butch" Conway, Gwinnett County Sheriff's Department, Gwinnett County Detention Center, Jail Nurses ("CMS"), Corizon Medical Services Inc. ("CMS"), Attorney Lucas Harsh and Gwinnett County Georgia, conspired against Plaintiff. Plaintiff is a Black male Attorney David Lipscomb sent out a damaging email that stated he did not like Black Males/Plaintiff. **See Exhibit B, Attorney Lipscomb email to Attorney Lucas Harsh.** The fact that Plaintiff would not consent to signing a General Consent to Medical Services "PHS" Form after they forced medical treatment on Plaintiff by way of a "PPD" Test. The malicious fabrication of evidence and those they deliberately destroyed the video evidence and the FBI officials was aware of it and know the allegations to be true.

## FACTUAL ALLEGATIONS

### 25.

On Friday February 18, 2011 Plaintiff Vance R. Johnson, was arrested
between 9:00 and 10:00 pm by the Gwinnett County Police Department, and
taken to Gwinnett County Detention Center, hereinafter named "GCDC" in
Lawrenceville, Georgia. For alleged Terroristic Threats and Acts, Battery
and Simple Battery. Plaintiff was sent to "GCDC" Booking Intake Medical
Unit / Corizon Correctional Medical Services Inc; hereinafter named
"GCDC" and "CMS" / "CCS", Plaintiff had his picture taken and spoke with
booking intake medical unit Supervisor Nurse, M E. Campbell, LPN
between 10:30 and 11:30 pm to complete the Medical Booking Intake
receiving and screening process. During the Booking medical screening
process, Plaintiff was asked if Plaintiff had any medical problems or needed
any medical treatment from them. Plaintiff told Booking Intake Medical
Unit Supervisor Nurse M.E. Campbell, LPN that Plaintiff did not require
any medical treatment from her. Plaintiff told Booking Intake Medical Unit
Supervisor Nurse M E. Campbell, LPN that Plaintiff has (RSD) - Left Foot,
from years ago. Plaintiff signed the Booking Medical Intake Receiving and
Screening "PHS" Form acknowledging his left foot Injury and vital signs
that had been taken. Plaintiff did not sign all of the "PHS" Medical

14

Documents Form Booking Intake Medical Unit Supervisor Nurse M E.
Campbell, LPN put in front of Plaintiff to sign at that time because she was
hostile towards Plaintiff and she wanted Plaintiff to sign medical forms that
she would not allow Plaintiff to read.

26.

Plaintiff was put back in the Booking In Processing Holding Cell.
Approximately 4 hours later a Corrections Officer, came back to Plaintiff
Booking In Processing Holding Cell and asked Plaintiff if Plaintiff was
ready to sign the General Consent to Medical Services "PHS" Form that
authorizes "GCDC" and "CMS", health care provider to provide Plaintiff
with general clinical and emergency care. Plaintiff said "NO", Plaintiff was
not authorizing "GCDC" and "CMS", to treat Plaintiff for any reason. The
Corrections Officer told Plaintiff that if Plaintiff gets hurt or needs any
medical treatment in the "GCDC" they cannot treat Plaintiff, if they cannot
give Plaintiff any medical treatment at all, Plaintiff could die if Plaintiff
needs any medical treatment. Plaintiff said, "No, Plaintiff will not sign any
General Consent to Medical Services "PHS" Form allowing any medical
treatment". Plaintiff told the Corrections Officer, "If Plaintiff needs medical
treatment (Our Heavenly Father God in Christ Jesus Name) will protect
Plaintiff and supply all of Plaintiff needs, Amen". The Corrections Officer,

15

then ask Plaintiff if Plaintiff would sign the Refusal of Clinical Services
"PHS" Form and Plaintiff said "Yes". The Corrections Officer took Plaintiff
to the Booking Intake Medical Unit Supervisor Nurse M E. Campbell, LPN
medical intake desk, on Saturday February 19, 2011 around 3:25 am Plaintiff
signed the Refusal of Clinical Services "PHS" Form and Booking Intake
Medical Unit Supervisor Nurse M.E. Campbell, LPN signed the Form also.
**See Exhibit C, Refusal of Clinical Services Form**. Booking Intake Medical
Unit Supervisor Nurse M.E. Campbell informed the Nurses and Corrections
Officers, in the booking unit, LPN that Plaintiff had refused any and all
medical treatment from them, "GCDC" and "CMS".

### 27.

Saturday Feb19, 2011 around 3:30 am until Sunday Feb 20,  2011
around 7:00 pm. the Corrections Officers, took Plaintiff three times around
the corner across from property unit demanding Plaintiff to get Medical
Treatment from the jail by way of a "PPD" test from "GCDC" and "CMS"
Booking Intake Medical Unit Nurse Lakeesha Sainsbury. Plaintiff stated to
Booking Intake Medical Unit Nurse Lakeesha Sainsbury and the Correction
Officers that Plaintiff had signed the Refusal of Clinical Services "PHS"
Form and Plaintiff was not authorizing any medical treatment. On Sunday

16

Feb 20, 2011 between 6:00 and 7:00 pm the Corrections Officer sent

Plaintiff for the forth time back to the Booking Intake Medical Unit Nurse's

chair, Nurse Sue Fajarado, LPN along with the Corrections Officer forced

Plaintiff to sit in the nurse's chair and allowed Booking Intake Medical Unit

Nurse Sue Fajarado, LPN to administer a "PPD" test. Approximately two

hours later between 9:20 and 9:30 pm Plaintiff was sent to the

Classifications (1H) or (2H)-Unit and was there only about (10) minutes

when Corrections Officer Christopher Revels (SO#692), in charge of

Classifications Unit, came to Plaintiff's Classifications Holding Cell and

told Plaintiff, Nurse Sue Fajarado, LPN wanted to see Plaintiff. Plaintiff said

"ok," Plaintiff walked up to Classifications Unit Officer Christopher Revels,

desk. Officer Revels told Plaintiff to have a seat and Booking Intake Medical

Unit Nurse Sue Fajarado, LPN will be here in a minute, Plaintiff complied.

A few minutes later Booking Intake Medical Unit Nurse Sue Fajarado, LPN

walked up to Classifications Unit Officers Christopher Revels, desk and then

came over to Plaintiff's table where Plaintiff was sitting and told Plaintiff

that she needed Plaintiff to sign a General Consent to Medical Services

"PHS" Form. Plaintiff then asked Booking Intake Medical Unit Nurse Sue

Fajarado, LPN if Plaintiff could please read the form that she wanted

Plaintiff to sign and she said yes. **See Exhibit D, General Consent to**

17

**Medical Services Form.** Plaintiff read over the General Consent to Medical

Services "PHS" Form and told Booking Intake Medical Unit Nurse Sue

Fajarado, LPN that Plaintiff is not going to sign this form saying Plaintiff

authorized the jail to give Plaintiff a "PPD" test, but Plaintiff would take it to

Plaintiff's attorney and get his advice on this matter. Booking Intake

Medical Unit Nurse Sue Fajarado, LPN told Plaintiff that she could not leave

until Plaintiff signed this General Consent to Medical Services "PHS" Form.

Plaintiff told Booking Intake Medical Unit Nurse Sue Fajarado, LPN again

that Plaintiff was not going to sign this General Consent to Medical Services

"PHS" Form, Booking Intake Medical Unit Nurse Sue Fajarado, LPN

walked over to Classifications Unit Officer Christopher Revels, desk and

said something to him, Classifications Unit Officer Christopher Revels,

walked over to Plaintiff in front of Booking Intake Medical Unit Nurse Sue

Fajarado, LPN and told Plaintiff if Plaintiff didn't sign the General Consent

to Medical Services "PHS" Form, there would be physical force used on

Plaintiff. Classifications Unit Officer Christopher Revels exact statement

was, "I will jump on your ass if you don't sign the form**". See Exhibit E,**

**Open Records Act Statements from Officer Revels**. Classifications Unit

Officer Christopher Revels was standing over Plaintiff with his fist clinched

threatening Plaintiff. Plaintiff told Classifications Unit Officer Christopher

Revels, Plaintiff was not signing any General Consent to Medical Services "PHS" Form because Plaintiff did not authorize them to (Treat) or (Test) Plaintiff and had already signed a Refusal of Clinical Services "PHS" Form. Classifications Unit Officer Christopher Revels, told Plaintiff to go back to Plaintiff Classifications Unit Holding Cell. About two minutes later Classifications Unit Officer Christopher Revels, came back to Plaintiff's Classifications Unit Holding Cell in front of Plaintiff's cell inmate and asked Plaintiff if Plaintiff was ready to sign the General Consent to Medical Services "PHS" Form, Plaintiff said "No". Officer Christopher Revels, threatened use of physical force on Plaintiff once again. This time in front of Plaintiff's cell inmate, Plaintiff then told Officer Christopher Revels, "do what you got to do to me, because Plaintiff is not signing any consent form". Officer Christopher Revels, then said he was calling the "Attack Squad", on Plaintiff and told Plaintiff that the "Attack Squad", were going to use physical force on Plaintiff. Plaintiff told Classifications Unit Officer Christopher Revels, "do what you got to do to me".

### 28.

About two minutes later, the two man "Attack Squad" (Rapid Response Team), Corrections Officers Robert Bailey, (SO#893) and Tochi Davis, (SO#1145) came to Plaintiff's cell and told Plaintiff to get on the

floor face down with Plaintiff's hands behind Plaintiff's back and don't move. Plaintiff complied with the unlawful malicious order that was given to Plaintiff by the two man (Rapid Response Team). They put the handcuffs around Plaintiff's wrists and over tightened them to the point Plaintiff's hands felt numb. They snatched Plaintiff up to a standing position by Plaintiff's arms; they then started dragging Plaintiff backwards by Plaintiff's arms while Plaintiff was still on Plaintiff's feet. They bent Plaintiff's wrists up and applied pressure upwards trying to dislocate Plaintiff's arms from Plaintiff's shoulders. Plaintiff was in excruciating pain while they were applying pressure and dragging Plaintiff. They drug Plaintiff backward for about 100 ft, at approximately 40 ft Plaintiff started praying, "Heavenly Father God in Christ Jesus Name please help me I cannot bear this pain". Calm came over me and Plaintiff was able to endure the pain. They threw Plaintiff in solitary confinement on Plaintiff's face in urine that was on the floor. About an hour later Classifications Unit Officer Christopher Revels, Supervisor SGT C. Lucas (SO#429), brought Plaintiff an inmate Infraction Report by DS1 Classifications Unit Officer Christopher Revels (SO#692) as the reporting officer listed. **See Exhibit F, Inmate Infraction Report.** The form charged Plaintiff with Failure to Comply with a Lawful Order and Obstruction, this was due to the fact that Plaintiff would not consent to

20

signing a General Consent to Medical Services "PHS" Form after they

forced medical treatment on Plaintiff by way of a "PPD" Test.

29.

On or about February 24th 2011, between 10:00 and 11:00 am,

Plaintiff called his  sister Yvette Johnson, and had her to call the FBI, Atlanta

Office, (404) 679-9000 and she spoke with a Female FBI Agent, and told her

what had happened to Plaintiff while Plaintiff was in the Gwinnett County

Jail. While Plaintiff was still in solitary confinement, on February 24th or

February 25th 2011, it came over the radio of a Corrections Officer

Lieutenant, who was standing at the desk with another Corrections Officer

that the FBI had arrived.  The Corrections Officer Lieutenant said "I believe

we have FUCKED UP NOW". On February 26 2011, Plaintiff was taken out

of solitary confinement, and was sent back to Classification Unit (1H) or

(2H) while there, Plaintiff told the Classifications Unit Correction Officer

that assigned Plaintiff to the F unit what had happened to Plaintiff at the

hands of the "Attack Squad" (Rapid Response Team),  and the reason

Plaintiff was placed in solitary confinement. Plaintiff told the Classifications

Unit Correction Officer that Plaintiff would be filing a complaint against the

Officers and jail nurses for what had happened and for violating Plaintiff's

Constitutional Rights. Plaintiff told the Officer that Plaintiff knew that there

was video evidence of what had happened to Plaintiff. Plaintiff put the

"GCDC" on notice at this time that a complaint and further action would be

filed. Plaintiff also told the Classifications Unit Correction Officer that gave

Plaintiff his plastic box container that had Plaintiff's personal items in it that

Plaintiff's sunglasses that were worth $400 dollars were missing from the

plastic box container. Later the sunglasses were returned to Plaintiff.

Plaintiff was assigned to housing unit (F) for the remaining 13 days of

Plaintiff's incarceration. Corrections Officer in charge of the (F) unit- from

Monday thru Friday was Corrections Officer Hill, Plaintiff told officer Hill

what had happened to Plaintiff, he said he already knew what had happened,

he told Plaintiff to just do what you are told to do. Plaintiff said "OK".

### 30.

On Saturday February 19, 2011 during the morning Plaintiff contacted

his mother, Rachel Johnson and asked her to contact Attorney David

Lipscomb her former employer and ask him if he would get Plaintiff out of

jail. Later that evening Plaintiff's mother informed Plaintiff that she had

spoken with Attorney David Lipscomb and he said he did not handle that

type of criminal matters any longer. He said he would contact one of his

friends that handles criminal matters that works in the same building as he

and ask him to take the case. Attorney Lucas Harsh came to Plaintiff's first

bond hearing on Sunday February 20, 2011. Attorney Lucas Harsh said he was David Lipscomb's friend and he would handle the case for $1,500 dollars. Plaintiff told Attorney Harsh to ask for a bond, he went in the back room and came back and said the Judge said she would not give Plaintiff a bond. He said for Plaintiff to stay in touch with him by calling his office and he would work on getting Plaintiff a bond. Later that night the Officers used excessive force on Plaintiff and placed Plaintiff in solitary confinement. Plaintiff made several calls to Attorney Harsh office starting on February 24, 2011 until March 12, 2011. Plaintiff spoke with Attorney Harsh's secretary a few times and left numerous messages on his voice mail. Plaintiff told his secretary what had happened to Plaintiff while in confinement. Attorney harsh never came to the jail to speak with Plaintiff about the incident or ask to review the video evidence. Plaintiff had a total of four bond hearings. Attorney Harsh only appeared at the first and fourth bond hearing. On the fourth bond hearing Plaintiff received a bond, only after the Judge stated to Attorney Harsh that if Plaintiff appeared in her courtroom she would deny Plaintiff's bond. Plaintiff had to agree not to appear in her courtroom as a stipulation for bond. This was to ensure that Plaintiff would not be able to tell his side of what happen to Plaintiff to a Gwinnett County Judge.

.                                 31.

On or about February 24, 2011 Plaintiff called from the Gwinnett
County jail and spoke with his mother Rachel Johnson and sister Yvette
Johnson Burse and told them what had happened while Plaintiff was
incarcerated and asked them to call Attorney David Lipscomb and tell him
what had happened and ask for his assistance. Plaintiff believed that
Attorney Lipscomb was looking into what had happened on behalf of
Plaintiff, because Attorney David Lipscomb holds nine different jobs in the
Gwinnett County Judicial system, State Bar of Georgia and State of Georgia
Judicial System.

Plaintiff received his file from Attorney Lucas Harsh and in the file
contained an email from Attorney David Lipscomb, which read: "Lucas, I
gave your number to my former housekeeper Rachel Johnson. Her adult son
Roland is in the Detention Center for a fight he had with his wife and son,
He's charged with Terroristic Threats and has no bond (and 2 simple battery
counts), was arrest Friday, has first appearance tomorrow.

Rachel asked me to give you a call, I don't see your car in the parking
lot so I'm sending this note. Rachel's number is 770-416-6590. She has 5
grown kids. I like the girls but not the boys, back when I was doing criminal
work, I represented all of them at one time or another. Roland is bright but

24

blames all his ills on racism, just FYI."

Attorney David Lipscomb had knowledge on February 24, 2011 of the fact that Plaintiff was thrown into solitary confinement after excessive force was used on him to sway him to sign a Consent to medical Treatment form which he had refused to sign, because Plaintiff called his mother Rachel Johnson and sister Yvette Johnson Burse and relayed what had happened to him and had them to call Attorney Lipscomb and let him know what had happen. Both mother and sister called Attorney Lipscomb, spoke with him, and ask for his assistance in protecting Plaintiff and Plaintiff's rights while incarcerated. Attorney Lipscomb, Sheriff Butch Conway, Attorney Lucas Harsh, Sgt C. Lucas (SO#429), Director of Nurses Shante Sims (CMS), Supervisor Cheryl Scott, RN (CMS), and Supervisor M.E. Campbell (CMS) had knowledge of Plaintiff's prolong solitary confinement and excessive force and did nothing to intervene. "The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 203 (4th Cir. 2002). Attorney Lipscomb Sheriff Butch Conway, Attorney Lucas Harsh, Sgt C. Lucas (SO#429), Director of Nurses Shante Sims (CMS), and Supervisor M.E. Campbell (CMS), was acting under color of state law which deprived Plaintiff of his

25

rights, privileges, or immunities secured by the Constitution or laws of the United States. Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir. 1996). "Therefore, if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly." Id. (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).

32.

Beginning on  Febuary 26, 2011 through March 12, 2011 Defendant's received multiple verbal notices of Plaintiff's intent to file a complaint and to get a copy of the video evidence from the Gwinnett County Detention Center, which triggered a duty to preserve evidence. The FBI also had a duty to have the video evidence preserved due to the fact they came to the Gwinnett County Detention to investigate the complaint that was made by Plaintiff's sister Yvette Johnson Burse. Plaintiff told the Classifications Unit Correction Officer that Plaintiff would be filing a complaint against the Officers and jail nurses for what had happened and for violating Plaintiff's Constitutional Rights. Plaintiff told the Officer that Plaintiff knew that there was video evidence of what had happened to Plaintiff. Plaintiff put the "GCDC" on notice at this time that a complaint and further action would be filed.  When Plaintiff was released from the Gwinnett County Detention

Center he made a written request on March 22, 2011under the Open Records

Act - Records Inspection Request for an investigation to be done on his

excessive force allegations and for a copy of the video evidence, that shows

excessive force. On June 1, 2011, Plaintiff received a written response to his

request denying all his allegations along with a statement that no video

evidence was available.

Statement by Sgt W. Mcelheney states, "Lastly, it must be noted that

due to the time lapse between the date of the incident and the date of the

complaint, no video was available of the incident. Based on this

investigation I submit that the evidence shows no threats of physical

violence were made to the complainant. No deputy used any excessive force

on the complainant, and there is no documented proof of any injuries to

complainant. Therefore, the evidence does not support Mr. Johnson claims

of threats and excessive use of force".

Plaintiff was not released from Gwinnett County Detention Center

until March 12, 2011 ten days later, after seeking medical treatment for

Plaintiff's injuries sustained while incarcerated, Plaintiff made a written

request for an investigation and a copy of the video evidence. Plaintiff

notified the jail in a timely matter that Plaintiff was seeking video evidence

while incarcerated and after Plaintiff was released. Defendants' claimed

excuses for the spoliation of this evidence are not credible. Defendants knew that the Jail videos would only last about 14 days before being recorded over. Defendants had a duty to preserve evidence over which they had control and "reasonably knew or could reasonably foresee was material to a potential legal action." ***China Ocean Shipping (Group) Co. v. Simone Metals, Inc.***, No. 97-C-2694, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999); ***Danis v. USN Communications, Inc.***, No. 98-C-7842, 2000 WL 1694325 (N.D. Ill. Oct. 23, 2000) at *32.

In addition, Attorney David Lipscomb sent a email to Defendant Attorney Lucas Harsh stating that he did not like **"Black males/Plaintiff"**. Plaintiff believe all Defendants followed Attorney David Lipscomb's lead to conspire against Plaintiff including the FBI Atlanta and FBI Headquarters Washington DC. The conduct of Defendants was malicious, intentional, and carried out because they had singled out Plaintiff. They all acted under the color of law with wanton malice. **See Exhibit L, Plaintiff Affidavit July 14**

## COUNTS - I THRU VII

FIRST, FOURTH, FIFTH, SEVENTH, EIGHTH, NINTH, FOURTEENTH AMENDMENT CLAIMS AND GEORGIA STATE LAW NEGLIGENCE CLAIM AGAINST ALL DEFENDANTS.

33.

Paragraphs 1 thru 33 are incorporated by reference as if fully alleged herein.

34.

At all times relevant herein, Defendant Corizon, Inc. was under contract with Gwinnett County to perform the non-delegable duty owed by the county and its sheriff to provide medical care to inmates in the Gwinnett County jail, and accordingly, the individual Defendants medical providers that Corizon placed in the Gwinnett County jail were acting under color of state law.

35.

Corizon employees chose to ignore the signed PHS medical document that Plaintiff and Corizon employee signed refusing all medical treatment. By failing to adhere to the signed document by Plaintiff. Corizon employees ignored their own medical policy and standards and that of the Gwinnett County jail. Ignoring the refusal of medical treatment by an inmate is cruel and unusual punishment. This action of the Corizon employees resulted in Plaintiff being subjected to a "maliciously and sadistically" use of excessive force by the Gwinnett County Jail officers to force Plaintiff to sign a document concurring to Medical treatment after the fact. This is a clear violation of RICO, 18 U.S.C. § 1961 and the First, Fourth, Fifth, Seventh,

29

Eighth, Ninth and Fourteenth Amendment to the United States Constitution.

36.

Gwinnett County Employees and Attorneys conspired against Plaintiff when Attorney David Lipscomb initiated an email to Attorney Lucas Harsh stating he did not like black males/ Plaintiff. Defendant's chose to ignore the signed PHS medical document that Plaintiff and Corizon employee signed refusing all medical treatment. By failing to adhere to the signed document by Plaintiff. Gwinnett County employees ignored their own medical policy and standards and that of the Gwinnett County jail. Ignoring the refusal of medical treatment by an inmate is cruel and unusual punishment. This action of the Corizon employees resulted in Plaintiff being subjected to a "maliciously and sadistically" use of excessive force by the Gwinnett County Jail officers to force Plaintiff to sign a document concurring to Medical treatment after the fact. This is a clear violation of RICO, 18 U.S.C. § 1961 and the First, Fourth, Fifth, Seventh, Eighth, Ninth and Fourteenth Amendment to the United States Constitution.

37.

Defendants Corizon Medical Services Inc. and agents or employees acting within the scope of said agency or employment failed to comply with the standard of care applicable to the nursing profession generally under the

30

circumstances and conditions then existing, and said deviation from the applicable standard of care constitutes professional negligence for which Defendants Corizon Medical Services and agents or employees are liable under Georgia law.

38.

On February 20 2011, Plaintiff was "maliciously and sadistically" assaulted without any provocation by failing to comply with the inmates Constitutional Rights that are already established not to receive medical treatment and procedures set in place by Gwinnett County Jail allowing inmates to sign waivers refusing medical treatment. Plaintiff was placed in solitary confinement, not allowed to have a bond hearing, false imprisonment, due to cruel and unusual punishment, and excessive force that caused Plaintiff to suffer a serious injury (torn rotator cuff and mental duress). . Accordingly, under Georgia law, "a public officer or employee may be personally liable only for ministerial acts negligently performed or acts [ministerial or discretionary] performed with malice or an intent to injure." Cameron v. Lang, 549 S.E.2d 341, 344 (Ga.2001).

39.

Plaintiff further alleged that, as a result of the excessive force used by Rapid Response Team (RRT), Corrections Officers Robert Bailey, (SO#893)

31

and Tochi Davis, (SO#1145) Plaintiff sustained multiple physical injuries

including a ("torn rotator cuff for 15 months, psychological trauma,

headaches, mental anguish including depression.

40.

Plaintiff alleges that all Defendants were in violation of RICO, 18 U.S.C. §

1961 and the Defendants violated the First, Fourth, Fifth, Seventh, Eighth,

Ninth and Fourteenth Amendment to the United States Constitution by using

excessive force against him. Plaintiff also asserts by Defendants placing

Plaintiff in solitary confinement was in violation of false imprisonment laws.

All Defendants had knowledge of the six-day solitary confinement. They

had visual contact at all times during the day and night. Defendants had the

power to prevent the prolonged solitary confinement. All Defendants

refusing to abide by their own policies and procedures they had in place

made them be a party to the violation of the Rico Act. Upon knowledge and

belief Plaintiff believes Attorney David Lipscomb's email he sent to

Attorney Lucas harsh played a key role in Plaintiff's physical pain and

bodily injuries sustained at the hands of all Defendants. The conduct

committed by the Defendants acting under the color of state law deprived

Plaintiff of his rights and privileges. The supervisory liability under § 1983

occurs either when the supervisor personally participates in the alleged

32

unconstitutional conduct or when there is a causal connection between the

actions of a supervising official and the alleged constitutional deprivation."

Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotes and

citations omitted). Plaintiff at no time offered any physical resistance to

Defendants. **See Attachments G through K, Statements given during**

**Gwinnett County Jail Excessive Force Investigation.**

41.

Defendants Sheriff Butch Conway, Director Shante Sims, Attorney

David Lipscomb and Corizon Medical Services Inc. failure to train and

supervisor their employees created their liability for injuries sustained by

Plaintiff. This is an ongoing pattern by the employees of the Gwinnett

County Detention Center.

42.

Plaintiff shows that the "failure to train amounts to deliberate

indifference to the rights of persons with whom the subordinates come into

contact and the failure has actually caused the injury of which the Plaintiff

complains." Belcher v. City of Foley, 30 F.3d 1390, 1397 (11th Cir. 1994).

"Failure to train can amount to deliberate indifference when the need for

more training is obvious . . . such as when there exists a history of abuse by

33

subordinates that has put the supervisor on notice of the need for corrective measures."

43.

As a direct and proximate result of Defendants illegal conduct, Plaintiff has suffered humiliation, anguish, embarrassment, loss of liberty and pain and suffering.

44.

Plaintiff is entitled to recover compensatory damages from the Defendants resulting from Defendants illegal conduct as alleged herein.

45.

Because the conduct of Defendants was malicious, intentional, and carried out because Plaintiff had been singled out by Defendants, Plaintiff is entitled to recover punitive damages from Defendants.

46.

**WHEREFORE,** Plaintiff respectfully prays that this Court:

(a)     Cause process to issue;

(b)     Conduct a trial by jury on all issues;

(c)     Enter judgment awarding Plaintiff compensatory damages to compensate him for damages incurred as a result of Defendants unlawful conduct;

34

(d)     Enter judgment awarding Plaintiff punitive damages in an amount
        sufficient to punish Defendants for their unlawful conduct and to deter
        defendants and others similarly situated from similar unlawful
        conduct in the future;

(e)     Award Plaintiff pre-and post-judgment interest at the maximum rates
        allowable by law;

(f)     Award Plaintiff his attorneys fees and expenses of litigation; personal
        and family secretary / paralegal fees and expenses of litigation; and

(g)     Award Plaintiff such other relief as this Court deems appropriate.


                                        Respectfully Submitted,

                                        Vance R. Johnson
                                        Plaintiff, Pro Se

                                        P.O. Box 399
                                        Lilburn, GA 30048
                                        (678) 457-4066

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| VANCE R. JOHNSON, | * | |
| | * | CIVIL ACTION |
| **Plaintiff,** | * | FILE NO. |
| v. | * | |
| | * | _____ _____ |
| | * | **JURY TRIAL** |
| SHERIFF R.L. "BUTCH" CONWAY, | * | |
| C. LUCAS (SO#429 SGT. "LUCAS"), | * | **DEMANDED** |
| CHRISTOPHER REVELS (SO#692), | * | |
| ROBERT BAILEY (SO#893), | * | |
| TOCHI DAVIS (SO#1145), | * | |
| CORIZON MEDICAL SERVICES INC. ("CMS"), | * | |
| SHANTE SIMS (CMS DIRECTOR OF NURSES) | * | |
| M.E. CAMPBELL (CMS)"SUPV" LPN-NURSES) | * | |
| SUE FAJARADO ("CMS" LPN-NURSE, | * | |
| LAKEESHA SAINSBURY ("CMS" NURSE), | * | |
| DAVID S. LIPSCOMB (ATTORNEY), | * | |
| LUCAS O. HARSH, (ATTORNEY) | * | |

**Defendants**. et al, Individual Capacities.

## CERTIFICATE OF SERVICE

This is to certify that I have served a true and accurate copy of the

within and foregoing CIVIL ACTION SUITE and SUMMONS / COVER

SHEET on each party to the above proceeding or that party's counsel, and

on every other person required to be served, by Process Server, United States

Mail or Federal Express to insure delivery to:

The names and addresses of those served are as follows:

(1)   SHERIFF R.L. "BUTCH" CONWAY
      Gwinnett County Jail, 2900 University Parkway
      Lawrenceville, Georgia 30043

(2)   SGT C. LUCAS (SO429)
      Gwinnett County Jail, 2900 University Parkway
      Lawrenceville, Georgia 30043

(3)   CHRISTOPHER REVELS (SO692)
      Gwinnett County Jail, 2900 University Parkway
      Lawrenceville, Georgia 30043

(4)   ROBERT BAILEY (SO893)
      Gwinnett County Jail, 2900 University Parkway
      Lawrenceville, Georgia 30043

(5)   TOCHI DAVIS (SO1145)
      Gwinnett County Jail, 2900 University Parkway
      Lawrenceville, Georgia 30043

(6)   CORIZON MEDICAL SERVICES Inc.
      Corizon Operation Headquarters
      12647 Olive Blvd
      St Louis MO 63141.

(7)   SHANTE SIMS (CMS DIRECTOR OF NURSES)
      Gwinnett County Jail, 2900 University Parkway
      Lawrenceville, Georgia 30043

(8)   M E. CAMPBELL (LPN-NURSE)

Gwinnett County Jail, 2900 University Parkway
Lawrenceville, Georgia 30043

(9)   SUE FAJARADO (LPN-NURSE)
Gwinnett County Jail, 2900 University Parkway
Lawrenceville, Georgia 30043

(10)   LAKEESHA SAINSBURY (NURSE)
Gwinnett County Jail, 2900 University Parkway
Lawrenceville, Georgia 30043

(11)   DAVID S. LIPSCOMB ATTORNEY AT LAW and (APPOINTED
SPECIAL MASTER GWINNETT COUNTY SUPERIOR COURT).
242 Culver Street, SW Suite 304 Lawrenceville, Georgia 30046

(12)   LUCAS O. HARSH ATTORNEY AT LAW
242 Culver Street, SW Suite 206
Lawrenceville, Georgia 30046

This the 17th day of February, 2013

Respectfully Submitted,

Vance R. Johnson
Plaintiff, Pro Se

P.O. Box 399
Lilburn, GA 30048
(678) 457-4066

38

## COMPLAINT EXHIBITS

EXHIBIT A. . . . . . . . . . . . . . . . . . . .  Medical Records

EXHIBIT B. . . . . . . . . . . . . . . . . . . .  Email (David Lipscomb)

EXHIBIT C. . . . . . . . . . . . . . . . . . . .  "PHS" Refusal of Clinical Services

EXHIBIT D. . . . . . . . . . . . . . . . . . . .  General Consent to Medical Services

EXHIBIT E. . . . . . . . . . . . . . . . . . . .  Officer Revels Statement from Open

Records Act

EXHIBIT F. . . . . . . . . . . . . . . . . . . .  Inmate Infraction Report

EXHIBIT G. . . . . . . . . . . . . . . . . . .  .Statement of Lakeesha Sainsbury

EXHIBIT H. . . . . . . . . . . . . . . . . . . .  Statement of Sue Fajardo LPN

EXHIBIT I. . . . . . . . . . . . . . . . . . . .  Statement of D/S Bailey

EXHIBIT J. . . . . . . . . . . . . . . . . . . .  Statement of D/S Lucas

EXHIBIT K. . . . . . . . . . . . . . . . . . . .  Statement of Investigator Thomas and

Bizzell

39

Date: 06/14/2011

vance johnson:

The following is in response to your 06/14/2011 request for delivery information on your Express Mail(R) item number EG53 6040 107U S. The delivery record shows that this item was delivered on 05/16/2011 at 04:36 AM in WASHINGTON, DC 20535 to R STUART. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

Date: 06/14/2011

vance johnson:

The following is in response to your 06/14/2011 request for delivery information on your Express Mail(R) item number EG53 6040 098U S. The delivery record shows that this item was delivered on 05/16/2011 at 04:33 AM in WASHINGTON, DC 20530 to E ANDERSON. The scanned image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service



**U.S. Department of Justice**

Civil Rights Division

168-19-0/377271

*Special Litigation Section - PHB*
*950 Pennsylvania Avenue, NW*
*Washington, DC 20530*

August 19, 2011

Vance Johnson
P.O. Box 399
Lilburn, GA 30048

Dear Mr. Johnson:

Thank you for your correspondence. The Special Litigation Section of the United States Department of Justice is responsible for enforcing the provision of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, that allows the Department to seek equitable relief to remedy a pattern or practice of misconduct by law enforcement agencies, such as police departments. When a systemic pattern or practice of misconduct is determined to exist, we have the authority to initiate civil action against the jurisdiction (city, county or state) in order to remedy the misconduct. The Department also has authority with regard to the anti-discrimination provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which together prohibit discrimination on the basis of race, color, sex or national origin by police departments receiving federal funds.

The Section's authority does not extend to investigating the personal grievances of a single individual. The Section is not authorized to represent individual citizens in legal matters or to give legal advice. The Section also does not have the authority to seek criminal punishment or monetary damages for misconduct. Therefore, we are unable to provide you with legal opinions or assistance with personal lawsuits or legal matters. If you wish to pursue this matter further, you might consider contacting a private attorney or a legal services lawyer. This individual may assist you in determining what, if any, remedies may be available to you.

We will consider your letter carefully along with other information we may receive to determine whether a pattern or practice investigation is warranted.

We hope that this information is helpful to you.    For additional information, you may want to review our website:

http://www.usdoj.gov/crt/split/index.html

Sincerely,

Anthony Njoku
Paralegal
Special Litigation Section



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

September 22, 2011

Mr. Vance Johnson
Post Office Box 399
Lilburn, GA  30048

Dear Mr. Johnson:

This letter is in response to the correspondence, dated March 28, 2011, that you mailed to the FBI.

I have forwarded your correspondence to our Atlanta Division for review and appropriate action.  Please direct any further concerns to that division, located at 2635 Century Parkway, Suite 400, Atlanta, GA 30345.

Sincerely yours,

Eric F. Thomas
Chief, Civil Rights Unit
Criminal Investigative Division



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

OCT 1 7 2011

Honorable Rob Woodall
Member of Congress
75 Langley Drive
Lawrenceville, GA 30046

Dear Congressman Woodall:

I am writing in response to your July 27, 2011, letter to the FBI on behalf of your constituent, Mr. Vance Johnson. Mr. Johnson contacted your office seeking assistance regarding a complaint he made to the FBI's Knoxville Field Office and was subsequently forwarded to the FBI's Atlanta Field Office. Mr. Johnson complained of civil rights violations allegedly committed by employees of the Gwinnett County Jail in Lawrenceville, Georgia.

Mr. Johnson has been advised by our Atlanta Field Office to contact that office directly with allegations of civil rights violations. Therefore, I am forwarding a copy of your letter to the FBI's Atlanta Field Office for further review and consideration. If Mr. Johnson has any additional information to support his allegations, he should furnish it directly to our Atlanta Field Office, located at 2635 Century Parkway NE, Suite 400, Atlanta, Georgia 30345, telephone number (404) 679-9000.

I appreciate your bringing this matter to our attention, and I hope this information will be helpful to you in responding to Mr. Johnson.

Sincerely yours,

Kevin L. Perkins
Assistant Director
Criminal Investigative Division

ROB WOODALL
SEVENTH DISTRICT, GEORGIA

COMMITTEE ON RULES

COMMITTEE ON THE BUDGET

**WASHINGTON, DC, OFFICE:**
TEL: (202) 225-4272
FAX: (202) 225-4696

**DISTRICT OFFICE:**
TEL: (770) 232-3005
FAX: (770) 232-2909

**ONLINE OFFICE:**
HTTP://WOODALL.HOUSE.GOV

# Congress of the United States
## House of Representatives
### Washington, DC 20515-1007

October 21, 2011

Mr. Vance R. Johnson
35 Gloster Road SW
Lawrenceville, Georgia 30044-4370

Dear Mr. Johnson:

In response to our request for assistance on your behalf, my office has received the enclosed reply from the Federal Bureau of Investigation.

We are committed to working with you until a resolution is reached. As soon as more information is available my office will contact you.

I thank you for your patience in this matter.

Sincerely,

Rob Woodall
Member of Congress

RW:mg

Enclosure



**U.S. Department of Justice**

Office of the Inspector General

*Investigations Division*

*1425 New York Avenue NW, Suite 7100*
*Washington, D.C. 20530*

January 27, 2012

Vance Roland Johnson
PO Box 399
Lilburn, GA 300048

Dear Mr. Johnson:

The purpose of this letter is to acknowledge receipt of your correspondence dated December 19, 2012.  The matters that you raised are more appropriate for review by another office or agency.  Therefore, your complaint has been forwarded to:

> Federal Bureau of Investigation
> Inspection Division
> 935 Pennsylvania Avenue NW
> Washington, D.C. 20535
> Telephone Number (202) 324-3000

Any further correspondence regarding this matter should be directed to that office.

I hope this answers any questions you have relative to this matter.

Sincerely,

Office of the Inspector General
Investigations Division