IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VANCE R. JOHNSON,      :
                        :
     Plaintiff,          :
                        :
v.                    :      CIVIL ACTION NO.
                        :      1:13-CV-0524-RWS
SHERIFF R.L. "BUTCH"      :
CONWAY, CHRISTOPHER      :
REVELS (SO #692), ROBERT      :
BAILEY (SO # 893), TOCHI      :
DAVIS (SO # 1145), CORIZON      :
HEALTH, INC., MAVIS      :
CAMPBELL and SUSAN      :
FAJARDO,      :
                        :
     Defendants.        :

## <u>ORDER</u>

This case is before the Court on Plaintiff's Motion for Leave to Amend [34] and Motion to Dismiss on Behalf of the Medical Defendants [28]. After reviewing the record, the Court enters the following Order.

**I.      Plaintiff's Motion to Amend**

Plaintiff seeks leave of court to amend his First Amended Complaint. Plaintiff's proposed amendments correct misnomers and make small factual

AO 72A
(Rev.8/82)

clarifications.  Plaintiff's motion is unopposed.[1]

Under Federal Rule of Civil Procedure ("Rule") 15(a)(2), leave to amend should be freely given when justice so requires.  As Plaintiff notes, the Court's Scheduling Order allows amendments to pleadings up to thirty days after filing of the Joint Preliminary Report and Discovery Plan.  (Scheduling Order, [33] at 7.)  Here, the Joint Preliminary Report was filed on May 15, 2013 and Plaintiff's Motion to Amend was filed nine days later on May 24, 2013.  The Scheduling Order also stayed discovery until the Court rules on the Medical Defendants' Motion to Dismiss.

Detecting no risk of unfair prejudice to Defendants, and seeing no opposition from them, the Court **GRANTS** Plaintiff's Motion to Amend [34] and accepts Plaintiff's Proposed Second Amended Complaint [34-1].

---

[1] Defendants Corizon Health, Inc, Mavis Campbell, and Susan Fajardo (collectively, "Medical Defendants") state in their reply brief in support of their motion to dismiss that "they do not oppose Plaintiff's motion to amend his first amended complaint."  (Def.s' Reply, [37] at 1.)  The other Defendants did not file a response to Plaintiff's motion and therefore, under Local Rule 7.1B, the motion is deemed unopposed.  N.D. Ga. L.R. 7.1(B).

2

## II.    Medical Defendants' Motion to Dismiss

### A.    Background[2]

On February 18, 2011, Plaintiff was arrested and taken to Gwinett County Detention Center.  When he arrived at the jail Plaintiff was sent to the intake medical unit operated by Corizon and its employees.  Plaintiff spoke with Defendant Campbell, the intake supervisor, to complete the medical intake receiving and screening process.  During the screening process, Plaintiff was asked if he had any medical problems or required any medical treatment. Plaintiff told Campbell that he did not require any treatment.  He informed Campbell that he had RSD in his left foot from a prior injury.  Plaintiff signed the intake receiving and screening form, which noted his pre-existing foot injury and stated that his vital signs had been taken.

When Plaintiff signed the intake form, he refused to sign any other forms put in front of him by Campbell "because she was acting hostilely toward Plaintiff and was insisting that he sign medical forms without letting him take time to read them."  When Plaintiff refused to sign any more forms, Campbell

---

[2] As this case is before the Court on a motion to dismiss, the Court accepts as true all well-pleaded facts in the Second Amended Complaint [34-1].  Cooper v. Pate, 378 U.S. 546, 546 (1964).

had Plaintiff placed in a holding cell in the booking area.  Approximately four hours later, an unknown detention officer came to the holding cell and asked Plaintiff if he would sign the General Consent to Medical Services Form, which authorized the jail health care provider to give Plaintiff general clinical and emergency care.  Plaintiff said "no" because he anticipated a prompt release from jail and did not want jail medical staff treating him for any reason.  The officer then asked Plaintiff if he would sign the Refusal of Clinical Services Form, and Plaintiff agreed.  The officer returned Plaintiff to Campbell at the medical intake desk and both Plaintiff and Campbell signed the refusal form. Campbell informed the nurses and detention officers in the booking unit that Plaintiff had refused any and all medical treatment at the jail.

After Plaintiff signed the refusal form, detention officers and nurses made multiple attempts to give Plaintiff a PPD test to screen for tuberculosis.  Each time, Plaintiff refused to consent to the test and told the nurse that he had signed the form refusing treatment.  Finally, on the evening of February 20, 2011, a detention officer ordered Plaintiff to sit in a chair while Defendant Fajardo administered a PPD test against Plaintiff's will.  Plaintiff was then sent to a holding cell.  After about ten minutes, Defendant Christopher Revels came to

4

Plaintiff's cell and told him that Defendant Fajardo wanted to see him. Fajardo told Plaintiff that she needed him to sign the General Consent to Medical Services Form.  Plaintiff read the form, but refused to sign it until he could show it to his lawyer.  The form had a handwritten notation: "Ok to take PPD test only; [patient] accepted PPD for dress in and then refused to sign consent." (General Consent to Medical Services, [1-1].)

Fajardo told Plaintiff that she could not leave until he signed the consent form, but Plaintiff refused.  At that point, Fajardo went over and spoke with Defendant Revels.  Plaintiff could not hear what was said.  Revels then walked over to Plaintiff and in Fajardo's presence, threatened to use physical force against Plaintiff if he did not sign.  Specifically, Revels stated "I will jump on your ass if you don't sign the form" while standing over Plaintiff with his fist clenched in a threatening manner.

Plaintiff told Revels that he would not sign the consent form because he was not authorizing treatment and he had already signed the form refusing treatment.  Officer Revels sent Plaintiff back to his holding cell.  About two minutes later, Revels visited Plaintiff's cell and asked if Plaintiff was ready to sign the consent form.  Plaintiff responded "no" and Revels again threatened to

5

use physical force against Plaintiff.  Plaintiff responded, "do what you got to do to me, because I'm not signing any consent form."  Then Officer Revels said he was calling the "attack squad" or "tack squad."  A few minutes later, two members of the jail's Rapid Response Team, Defendants Bailey and Davis, came to Plaintiff's cell and told him to get on the floor face down, put his hands behind his back, and not move.  Plaintiff complied with their orders.

Defendants Bailey and Davis handcuffed Plaintiff's hands so tightly that his hands felt numb.  They snatched Plaintiff up to a standing position by pulling on his arms, and then they started dragging him backward by his arms. They bent Plaintiff's wrists upward and applied pressure as if they were trying to dislocate Plaintiff's shoulders.  Plaintiff was in excruciating pain while the officers dragged him for about 100 feet.  Plaintiff did not offer any resistance. This use of force by Defendants Bailey and Davis took place in the presence of Defendant Fajardo.  The Second Amended Complaint contains no other factual allegations regarding the Medical Defendants.

B.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to

6

relief." While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

     "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). However, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Furthermore, the court does not "accept as

7

true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." D.L. Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005); see also Fed. R. Civ. P. 12(d). However, documents attached to a complaint are considered part of the complaint. Fed. R. Civ. P. 10(c). Documents "need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim. D.L. Day, 400 F.3d at 1276. At the motion to dismiss phase, the Court may also consider "a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)). "'Undisputed' means that the authenticity of the document is not challenged." Id.

C.    Analysis

1.    *First Amendment Retaliation Claim Against Defendants Campbell and Fajardo (Count I)*

8

A First Amendment retaliation claim has three elements: "(1) [Plaintiff's] speech was constitutionally protected; (2) [Plaintiff] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). Plaintiff claims he had a First Amendment right to express his refusal to consent to medical treatment, but Defendants Campbell and Fajardo "coerced him into submitting to medical treatment against his will" and "retaliate[d] against him for refusing treatment." (Second Am. Compl., [34-1] ¶ 57.)

Here, the alleged retaliatory conduct by Defendant Campbell was placing Plaintiff in a holding cell. (Id. ¶ 19.) However, as Defendants note, at the time Plaintiff was put in the cell, Plaintiff had not refused medical treatment. He had refused to sign *any* forms regarding treatment (i.e., consent to treat or refusal of treatment). (Id. ¶ 18; Med. Def.s' MTD, [28-1] at 9.) As soon as Plaintiff signed the Refusal of Clinical Services Form, he was removed from the cell and taken back to Defendant Campbell to sign the document. (Id. ¶¶ 23-24.) Defendant Campbell took no further action against Plaintiff. Therefore, the

Court finds no causal connection between the protected speech – refusing treatment – and the alleged retaliatory action.  Accordingly, Plaintiff's First Amendment retaliation claim is **DISMISSED** against Defendant Campbell.

Plaintiff appears to allege that Defendant Fajardo retaliated against him for refusing medical treatment in two ways: (1) by administering the PPD test against his will, and (2) by acting in concert with the County Defendants to use excessive force against Plaintiff.  (Id. ¶¶ 28-43A.)  Regarding administration of the PPD test, the Court finds that Plaintiff has alleged sufficient facts to state a retaliation claim against Fajardo.  The Court agrees with Defendants that the State has a very real interest in screening inmates for tuberculosis, and administration of the test against Plaintiff's will was not in itself a constitutional violation.  See Dunn v. Zenk, No. 1:07-CV-2007-RLV, 2007 WL 2904170, at *3 (N.D. Ga. Oct. 1, 2007) ("[S]tates have a legitimate penological interest in controlling the spread of tuberculosis such that involuntary administration of a test for the disease does not offend the Constitution . . . .").  However, for his First Amendment retaliation claim, Plaintiff does not have to show that the alleged retaliatory conduct rose to the level of a constitutional violation, only that he "suffered adverse action such that the [defendant's] allegedly retaliatory

10

conduct would likely deter a person of ordinary firmness from engaging in such speech." Smith, 532 F.3d at 1276.  Therefore, Defendants' focus on the constitutionality of administering the test is misplaced.

The primary issue here is whether the test was given against Plaintiff's will *in retaliation for* Plaintiff refusing medical treatment.  In other words, the inquiry is whether Plaintiff's protected speech subjectively motivated Defendants to punish him.  Id. at 1278.  According to the time line set forth in the Complaint, it was after Plaintiff refused treatment that officers and nurses began attempting to force him to take the PPD test.  (Second Am. Compl., [34-1] ¶¶ 24-26.)  Plaintiff repeatedly refused to consent to the test, but Defendant Fajardo administered it anyway.  (Id. ¶¶ 26-28.)  At this stage of the litigation, the Court finds that Plaintiff has stated a plausible claim for First Amendment retaliation against Fajardo based on this conduct.[3]

_____

[3] In the Eleventh Circuit, the subjective motivation issue is evaluated under a burden-shifting formula.  Smith, 532 F.3d at 1278 (citing Thaddeus-X v. Blatter, 175 F.3d 378, 399 n. 14 (6th Cir. 1999); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).  "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant.  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."  Thaddeus-X, 175 F.3d at 399 (citation omitted).  In this case, for example, discovery may reveal that it is the general policy of Gwinnett County Jail to administer PPD tests to all inmates.  However, this burden-shifting analysis is not

Regarding Plaintiff's contention that Fajardo conspired with officers to use force against Plaintiff in retaliation for his protected speech, the Court finds Plaintiff has not pled sufficient facts to support such a claim.  Plaintiff does not allege that Fajardo herself used any force against him other than administering the PPD test.  Instead, he alleges that she "caused Defendants Revels, Bailey and Davis to threaten and use physical force against Plaintiff to coerce him into signing the consent form and/or punish him for refusing to sign it."  (Second Am. Compl., [34-1] ¶ 70.)  Therefore, the Court interprets the claim against Fajardo as conspiracy to use retaliatory force against Plaintiff in violation of Plaintiff's First Amendment rights.

"In order to prove a Section 1983 conspiracy, a plaintiff 'must show that the parties reached an understanding to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.'" Valentine v. Bush, No. 2:10-CV-0097-RWS, 2012 WL 27416, at *5 (N.D. Ga. Jan. 4, 2012) (quoting Bailey v. Bd. of Cnty. Comm'rs., 956 F.2d 1112, 1122 (11th Cir. 1992) (internal quotations omitted).  The Eleventh Circuit has explained, "the linchpin for conspiracy is agreement, which presupposes communication." Bailey, 956

_____

appropriate at the motion to dismiss phase.

AO 72A
(Rev.8/82)

F.2d at 1122. "[A]n agreement may be inferred from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct." Am. Fed'n of Labor & Cong. of Indus. Org.s v. City of Miami, 637 F.3d 1178, 1192 (11th Cir. 2011). Accordingly, in Valentine, this Court found the plaintiff had alleged sufficient facts to state a claim for § 1983 conspiracy where: (1) plaintiff alleged all defendants actively participated in the events leading up to the alleged constitutional violation, (2) plaintiff alleged all defendants "acted in concert" when the constitutional violation was committed, and (3) "[t]he Amended Complaint [was] replete with allegations that the Defendants communicated with one another and actively participated with one another" leading up to and during the event in question. 2012 WL 27416, at *6.

Here, Plaintiff alleges, Defendant Revels came to Plaintiff's cell and told him that Fajardo wanted to see him. After Plaintiff refused to sign the General Consent to Medical Services Form, Plaintiff saw Fajardo walk over and speak to Revels but he did not hear what was said. Revels then threatened to use physical force against Plaintiff if he didn't sign the form. Plaintiff again refused to sign and he was returned to his cell. The use of force by Defendants

AO 72A
(Rev.8/82)

Bailey and Davis that followed was witnessed by Fajardo, but there are no other allegations regarding her participation in these events.

The Court finds these allegations insufficient to show that Fajardo conspired with the County Defendants to use force against Plaintiff in retaliation for his refusal of medical treatment. At most, Plaintiff alleges that Farjardo and Revels had two communications – one that sent Revels to get Plaintiff from his cell to speak with Fajardo (the Court notes there is no direct allegation regarding such a communication, but construes the Complaint in a light most favorable to Plaintiff), and the one following Plaintiff's refusal to sign the general consent form. Plaintiff admits he has no knowledge of the content of the second conversation. The Complaint does not contain any allegations regarding communications between Fajardo and the other officers (who were called to Plaintiff's cell by Revels and who ultimately used force against Plaintiff), or any allegation that Fajardo and Revels communicated after Plaintiff returned to his cell. Although Plaintiff alleges that Fajardo witnessed the officers' use of force, he does not allege that she assisted or participated in the use of force in any way.

14

These allegations do not support a finding that there was an agreement between Fajardo and the officers to violate Plaintiff's constitutional rights. Therefore, insofar as Plaintiff's First Amendment retaliation claim is based on an alleged conspiracy between Fajardo and the officers to use force in retaliation for Plaintiff's refusal of medical treatment, the claim is **DISMISSED**.

2. *Fourteenth Amendment Excessive Force Claim Against Defendant Fajardo (Count II)*

Under Count II, Plaintiff alleges: "Defendants Fajardo, Revels, Bailey and Davis acted under color of state law to subject Plaintiff to the excessive use of physical force – applied maliciously and sadistically to cause harm, to force him to sign a document that he had the right to refuse to sign, and to improperly punish or retaliate against him for his continued refusal to sign the document, thereby violating his right to be free from excessive force as a pretrial detainee under the Fourteenth Amendment." (Second Am. Compl., [34-1] ¶ 62.) For the reasons enumerated above in Part II.C.1, *supra*, the Court finds that Plaintiff has not stated a claim for excessive use of force against Defendant Fajardo. He

has not pled sufficient facts to establish a § 1983 conspiracy.[4]  Accordingly, this claim is **DISMISSED** against Defendant Fajardo.

> 3.    *State-law Battery Claim Against Defendant Fajardo (Count IV)*

First, Plaintiff alleges, "Defendant Fajardo committed a battery against Plaintiff under Georgia law when she forced him to submit to a PPD test without his consent and against is will."  (Second Am. Compl., [34-1] ¶ 70.) "Under proper factual conditions and circumstances, actions against medical practitioners based on assault and battery for acts arising out of their professional conduct are recognized in Georgia."  Irwin v. Arrendale, 159 S.E.2d 719, 724 (Ga. Ct. App. 1967).  "Health officers are personally liable if, in enforcing health measures, they do their work negligently, thereby causing unnecessary damage, or if they act unreasonably, arbitrarily, maliciously, or in excess of their authority."  Id.  However, prisoners may not recover for battery against healthcare professionals who perform medical testing on prisoners

---

[4] To the extent Plaintiff's claim rests on Fajardo's administration of the PPD test, that action was not an unconstitutional use of force.  Dunn, 2007 WL 2904170, at *3 (N.D. Ga. Oct. 1, 2007) ("[S]tates have a legitimate penological interest in controlling the spread of tuberculosis such that involuntary administration of a test for the disease does not offend the Constitution . . . .").

where: (1) the professional's conduct was "not arbitrary or capricious or without substantial reason;" (2) the medical testing was performed "in order to determine whether [a prisoner] was afflicted with a communicable, contagious, or infectious disease which could spread to other prisoners;" (3) the testing, "under medical standards, is a proper method of examination for the disease;" and (4) "either the prescribing of the [testing] was based upon reasonable grounds for suspecting plaintiff was afflicted with the disease or that the examination complained of was such as could be prescribed for plaintiff, in conformity with sound medical and public health practices, as routine prophylaxis without particular grounds for suspicion." Id. at 726.

Here, the Parties do not appear to dispute that PPD is an appropriate method for screening for tuberculosis, or that tuberculosis is a contagious disease that may require prophylactic treatment in prisons. Rather, Plaintiff alleges the PPD test was administered against his will in retaliation for his refusal of medical treatment, which could support a finding that Fajardo acted maliciously. Therefore, at this stage, the Court **DENIES** Defendants' motion to

17

dismiss Plaintiff's battery claim against Defendant Fajardo to the extent the claim is based on improper administration of a PPD test.[5]

Second, Plaintiff alleges, Fajardo committed a battery "when she caused Defendants Revels, Bailey and Davis to threaten and use physical force against Plaintiff to coerce him into signing the consent form and/or punish him for refusing to sign it." (Second Am. Compl., [34-1] ¶ 70.)  Again, Plaintiff appears to pursue a conspiracy theory of liability against Fajardo.  "A conspiracy upon which a civil action for damages may be founded is a combination between two or more persons either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort."  Savannah Coll. of Art & Design, Inc. v. Sch. of Visual Arts of Savannah, Inc., 464 S.E.2d 895, 896 (Ga. Ct. App. 1995) (citation omitted).  "The essential element . . . is the common design."  Id. (citation omitted).  For the reasons stated in Part II.C.1, *supra*, the Court finds Plaintiff has not alleged sufficient facts to show a conspiracy or common design between Fajardo and the County Defendants to

---

[5] If, however, further proceedings reveal that the test was not given in retaliation for Plaintiff's protected speech, but was administered in accordance with health policies at the jail or for some other legitimate reason, Plaintiff's battery claim against Defendant Fajardo will not stand.

18

commit a battery against Plaintiff.  Therefore, to the extent it is based on an

alleged conspiracy to use force against Plaintiff, Plaintiff's battery claim is

**DISMISSED** against Defendant Fajardo.

>  4.     *Negligence Claim Against Defendants Campbell and*
>         *Fajardo (Count V)*

In support of his negligence claim, Plaintiff alleges that Defendants

Campbell and Fajardo "unreasonably interfer[ed] with Plaintiff's right to

withhold consent for medical treatment" and "unreasonably attempt[ed] to force

him to provide such consent" and "unreasonably caus[ed] him to suffer injuries

as a proximate result of such conduct."  (Second Am. Compl., [34-1] ¶ 74.)  In

Georgia, the essential elements of a negligence claim are: (1) a legal duty; (2) a

breach of that duty; (3) an injury; and (4) a causal connection between the

breach and the injury.  Morton v. Horace Mann Ins. Co., 693 S.E.2d 352, 355

(Ga. Ct. App. 2006).  Plaintiff appears to suggest that Medical Defendants had a

duty to not interfere with his right to refuse medical treatment.  (Pl.'s Resp. Br.,

[35] at 20.)

It is clear that Defendant Campbell did not attempt to interfere with

Plaintiff's right to refuse treatment.  As discussed in Part II.C.1, *supra*, as soon

19

as Plaintiff signed the refusal form, Campbell also signed it and informed jail personnel that Plaintiff was refusing treatment.  Therefore, Plaintiff's negligence claim against Campbell is **DISMISSED.**  However, the allegations in the Complaint could support a claim that Defendant Fajardo unreasonably interfered with Plaintiff's right to refuse treatment. Based on the Court's findings in Parts II.C.1 and II.C.3, *supra*, the Court **DENIES** Defendants' motion to dismiss Plaintiff's claim for negligence against Defendant Fajardo to the extent the claim is based on administration of the PPD test.

> 5. *Respondeat Superior Claim Against Corizon (Count VI)*

Plaintiff alleges that Corizon is liable for the tortious acts of Campbell and Fajardo who were employees or agents of Corizon and were acting within the scope of their agency or employment.  (Second Am. Compl., [34-1] ¶ 77.) Defendants' sole response to this claim is, if the individual Defendants did not violate state law, Corizon cannot be held vicariously liable.  (Def.s' MTD Br., [28-1] at 19; Def.s' Reply, [37] at 10.)  Therefore, to the extent state-law tort claims remain against Defendant Fajardo, Plaintiff's respondeat superior claim against Corizon remains and Defendants' motion to dismiss the claim is **DENIED**.

AO 72A
(Rev.8/82)

## Conclusion

Based on the foregoing, Plaintiff's Motion for Leave to Amend [34] is **GRANTED** and Medical Defendants' Motion to Dismiss [28] is **DENIED in part and GRANTED in part.**

Defendants' motion is **granted** as to the following claims:

•   First Amendment retaliation claim against Defendant Campbell;

•   First Amendment retaliation claim against Defendant Fajardo insofar as it is based on conspiracy to use force in retaliation for protected speech;

•   Fourteenth Amendment excessive force claim against Defendant Fajardo;

•   State-Law battery claim against Defendant Fajardo insofar as it is based on an alleged conspiracy to commit battery; and

•   Negligence claim against Defendant Campbell.

The remaining claims are:

•   First Amendment retaliation claim against Defendant Fajardo insofar as it is based on administration of the PPD test;

•   State-law battery claim against Defendant Fajardo insofar as it is based on administration of the PPD test;

•   Negligence claim against Defendant Fajardo insofar as it is based on administration of the PPD test; and

21

- Respondeat Superior claim against Corizon to the extent state-law tort claims remain against Defendant Fajardo.

**SO ORDERED**, this  30th  day of September, 2013.


_Richard W. Story_
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)