**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| VANCE R. JOHNSON, | : |
|   Plaintiff, | : |
| v. | : CIVIL ACTION NO. |
|  | : 1:13-CV-0524-RWS |
| SHERIFF R.L. "BUTCH CONWAY, et al., | : |
|   Defendants. | : |

**ORDER**

This case is before the Court on Plaintiff's Motion for Reconsideration, or, in the Alternative, Motion to Amend [41]. After reviewing the record and the Parties' submissions, the Court enters the following Order.

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but rather, only when "absolutely necessary." N.D. Ga. L.R. 7.2(E). Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003). A motion for reconsideration may not be used "to present the court with arguments already

heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." Id. at 1259.  Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." Adler v. Wallace Computer Servs., Inc., 202 F.R.D. 666, 675 (N.D. Ga. 2001).  Finally, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996).

Plaintiff seeks reconsideration of portions of the Court's Order dated September 30, 2013 [39].  Specifically, Plaintiff moves for reconsideration of: "(1) the dismissal of Plaintiff's claim that Defendant Fajardo (and, by virtue of *respondeat superior*, her employer Defendant Corizon) is liable for the use of excessive force against Plaintiff for purposes of the Fourteenth Amendment and state law battery claims; and (2) the dismissal of the use of force claim against Fajardo and Corizon as part of Plaintiff's First Amendment retaliation claim, which the Court has permitted to proceed only on the theory that the

2

involuntarily administered TB test was retaliatory." (Pl.'s Br., [41] at 1-2 of 11.)  In large part, Plaintiff's motion rehashes arguments already presented to the Court.  However, Plaintiff identifies "two additional facts that have come to light since the briefing of the motion to dismiss that also lend plausibility to the allegation that Fajardo asked the detention staff to use force against Johnson." (Id. at 2 of 11.)

First, Plaintiff points to a Gwinnett County jail policy that was produced by Defendants on June 7, 2013.  (Informed Consent and Right to Refuse Treatment Policy/Procedure, [41-1].)  The policy reads, in pertinent part:

> In certain cases, refusal of treatment for some
> procedures will have repercussions.  This includes:
>
> > (a) In the event that a patient refuses a PPD,
> > s/he is to be housed in an isolated cell,
> > preferably negative pressure until s/he consents
> > to a chest x-ray or medical documentation is
> > obtained establishing that the patient is not
> > symptomatic of tuberculosis.

(Id. at 4 of 5.)  According to Plaintiff, the policy means that "in the event an inmate refuses a medical procedure, 'negative pressure' is to be applied until the inmate/patient consents to the procedure." (Pl.'s Br., [41] at 3 of 11.)  Thus, he argues, "it is certainly plausible that Nurse Fajardo knew that a request for

3

Revels' assistance would lead him and the Rapid Response Team to bring 'negative pressure' in the form of 'gratuitous, punitive and excessive' force against an inmate who refused to comply with her instructions." (Id. at 4 of 11.)

Medical Defendants counter, however, that "negative pressure" refers to a type of holding cell – negative *air* pressure cells, which are used to control the spread of TB by preventing its airborne spread. (Def.s' Resp., [49] at 7 of 11.) See CDC, "Current Trends Prevention and Control of Tuberculosis in Correctional Institutions: Recommendations of the Advisory Committee for the Elimination of Tuberculosis" (May 12, 1989), *available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/00001388.htm ("Persons with suspected or confirmed TB . . . should be immediately placed in respiratory isolation (e.g., housed in an area with separate ventilation to the outside, negative air pressure in relation to adjacent areas, and at least four to six room air exchanges per hour) [].").

In light of Defendants' explanation for the policy language, the Court finds Plaintiff's interpretation of the policy unpersuasive. The excerpted policy language is limited to an inmate's refusal to take a TB test, it does not mention the use of force, and it does not ultimately favor inmates consenting to the TB

4

test (i.e., it contemplates obtaining confirmation of an inmate's TB status through other means).  Furthermore, the policy does not bolster Plaintiff's allegation that *Defendant Fajardo*, who is not a detention staffer or Rapid Response Team member, conspired with detention staff to use excessive force or commit a battery against Plaintiff.

Second, Plaintiff cites a class action filed in the Northern District of Georgia on July 6, 2013, which alleges a "pattern and practice of unnecessary and excessive force inflicted upon hundreds of inmates of the Gwinnett County Jail by a Rapid Response Team that is mobilized on a daily basis to subject detainees to gratuitous, punitive, and sadistic pain in retaliation for loud, intoxicated, or alleged noncompliant behavior . . . ."  (Pl.'s Br., [41].)  Again, the Court is uncertain how this development demonstrates that Defendant Fajardo knew, at the time the events in question occurred, that the jail's Rapid Response Team would use excessive force against Plaintiff for refusing to sign a medical consent form.  This "new evidence" does not change the Court's analysis regarding an alleged conspiracy between Defendant Fajardo and detention staff to use excessive force against Plaintiff.

5

AO 72A
(Rev.8/82)

Thus, the new developments identified by Plaintiff do not alter the Court's analysis in its previous Order.  (See Order, [39] at 12-19 of 22.)  Plaintiff has not identified an intervening development or change in controlling law or a need to correct a clear error of law or fact.  Therefore, Plaintiff's motion for reconsideration is **DENIED**.

Alternatively, Plaintiff moves the Court for leave to amend the Second Amended Complaint to add allegations regarding Fajardo's involvement in detention staffs' use of force against Plaintiff.  (See Pl.'s Br., [41] at 7-8 of 11.)  Plaintiff cites Davila v. Delta Air Lines, Inc., 326 F.3d 1183 (11th Cir. 2003), in support of his motion, claiming: "The general rule is that a plaintiff will be permitted to amend a dismissed complaint where the dismissal is based upon technical defects." (Pl.'s Br., [41] at 8 of 11.)  However, in Davila, the circuit court concluded that the district court had *not* dismissed a case based on technical defects, but rather, had addressed the merits of the plaintiff's claims under a Rule12(b)(6) analysis.  Here, the Court addressed the merits of Plaintiff's claims and found his allegations insufficient to state a claim against Fajardo for conspiracy to use excessive force or commit a battery (except to the extent the battery claim is based on her alleged improper administration of

6

Plaintiff's TB test).  The defects in Plaintiff's Second Amended Complaint are not technical; they are substantive.

The Medical Defendants oppose amendment on grounds that Plaintiff's two prior amendments failed to cure deficiencies in Plaintiff's claims. "Generally, a party should be given at least one opportunity to amend before the district court dismisses the complaint with prejudice.  However, amendment need not be allowed '(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.'" Butler v. Prison Health Servs., Inc., 294 Fed. App'x 497, 500 (11th Cir. 2008) (citations omitted).  Here, the Court allowed Plaintiff to amend his Complaint twice. Leave to file the Second Amended Complaint was granted after Defendants moved to dismiss Plaintiff's claims.  A third bite of the apple is not warranted.

Some of Plaintiff's new allegations arise from the policy and class action discussed above, which are irrelevant to the Court's analysis.  The other allegations are based on "information and belief," not new facts known to Plaintiff. In his Second Amended Complaint, Plaintiff alleged that he saw

7

Fajardo and Defendant Revels speak prior to the officers' use of force against Plaintiff, but he could not hear what was said between them. (Second Amended Complaint, [34-1] ¶ 34.) Thus, the new allegations regarding what was said during that communication and the intent behind that communication are pure conjecture. Further, there is no apparent reason why Plaintiff could not have included these allegations in his Second Amended Complaint. Consequently, Plaintiff's alternative motion to amend the Second Amended Complaint is **DENIED.**

## Conclusion

Based on the foregoing, Plaintiff's Motion for Reconsideration, or, in the Alternative, Motion to Amend [41] is **DENIED.**

**SO ORDERED**, this   2nd   day of May, 2014.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)