# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

VANCE R. JOHNSON,        :
                              :
      Plaintiff,          :
                              :
v.                        :     CIVIL ACTION NO.
                              :     1:13-CV-0524-RWS
SHERIFF R.L. "BUTCH"    :
CONWAY, et al.,        :
                              :
      Defendants.     :

## <u>ORDER</u>

This case comes before the Court on Defendants Corizon Health, Inc. and Susan Fajardo, LPN's Motion for Summary Judgment ("Medical Defendants' MSJ") [79] and Motion for Summary Judgment on Behalf of Defendants Sheriff R.L. Conway and Deputies Christopher Revels, Robert Bailey and Tochi Davis ("County Defendants' MSJ") [83]. After a review of the record, the Court enters the following Order.

## **Background**[1]

---

[1] Unless otherwise indicated, the Court relies on the statements of facts submitted by Defendants. If, however, a fact is disputed, the Court views all evidence and factual inferences in the light most favorable to Plaintiff as the non-moving party, as the Court must on a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

This case arises out of Plaintiff Vance R. Johnson's arrest by the Gwinnett County Police Department and his subsequent detention.  On February 18, 2011, Plaintiff was arrested and taken to Gwinnett County Detention Center ("GCDC").  (Statement of Undisputed Facts in Support of Defs.' Mot. for Summ. J. ("County Defs.' SOMF"), Dkt. [83-1] ¶ 1.)

A.    Plaintiff's Medical Screening

When he arrived at GCDC, Plaintiff was sent to the intake medical unit operated by Corizon and its employees.  Defendant Mavis Campbell[2] ("Nurse Campbell") initially attended to Plaintiff's medical intake receiving and screening.  (Defs. Corizon Health, Inc. & Susan Fajardo, LPN's Statement of Material Facts as to Which There is No Genuine Issue to be Tried ("Medical Defs.' SOMF"), Dkt. [79-1] ¶ 6.)

During the screening process, Plaintiff was asked if he had any medical problems or required any medical treatment.  Plaintiff signed the intake receiving and screening form, which noted a pre-existing foot injury and stated that Plaintiff's vital signs had been taken.  (2d Am. Compl., Dkt. [40] ¶ 7.)

---

[2]  The Court dismissed the First Amendment retaliation claim against Defendant Campbell in its Order dated September 30, 2013.  (Dkt. [39].)

2

While Plaintiff signed the intake form and a Refusal of Clinical Services Form, he refused to sign any other forms put in front of him by Nurse Campbell. (Id. ¶ 24.)

After Plaintiff signed the refusal form, detention officers and nurses made multiple attempts to give Plaintiff a pure protein derivative test ("PPD test") to test for the presence of tuberculosis.  In a PPD test, a small needle is inserted just under the skin. (County Defs.' SOMF, Dkt. [83-1] ¶ 3.)  The PPD test is part of the admission process for the Gwinnett County Jail, in order to control the spread of tuberculosis, which is highly contagious and may be deadly.  (Id. ¶ 4.)

Plaintiff refused the PPD test three times.  (Medical Defs.' SOMF, Dkt. [79-1] ¶ 7.)  Defendant Susan Fajardo ("Nurse Fajardo") made the fourth attempt to administer the PPD test to Plaintiff.  (Id. ¶ 8.)  Plaintiff sat in Nurse Fajardo's chair, placed his arm down, and allowed Nurse Fajardo to wipe his arm and administer the PPD test.  (Id. ¶ 9.)  The Medical Defendants claim that Plaintiff did not verbally inform Nurse Fajardo at the time she administered the test that he intended to refuse the test.  (Id. ¶ 10.)  Accordingly, Nurse Fajardo interpreted Plaintiff's actions as consent to the test.  Plaintiff, however, testifies

3

that he told Nurse Fajardo that he "already had signed the refusal of medical treatment."  (Johnson Depo., Dkt. [84-1] at 122.)

After administering the PPD test to Plaintiff, Nurse Fajardo noticed that Plaintiff had previously signed a "Refusal of Clinical Services" form.  (County Defs.' SOMF, Dkt. [83-1] ¶ 7.)  Because Nurse Fajardo interpreted Plaintiff's behavior in her chair as consent to the PPD test, she asked Plaintiff to sign a "general consent to treatment" form once more, in case "he had changed his mind" about consenting to medical treatment.  (Id.)  Plaintiff refused again.  (Id.)  Plaintiff further refused to sign a document stating he had consented to the PPD test only.  (Id.)

B.     Plaintiff's Transit to the Disciplinary Unit

Defendant Christopher Revels ("Deputy Revels") was also present when Plaintiff refused Nurse Fajardo's request to sign the document acknowledging that he had consented to the PPD test.  (Id. ¶ 10.)  Deputy Revels informed Plaintiff that if he did not sign the acknowledgment, he would receive a "failure to comply" disciplinary report.  (Id.)  Plaintiff continued to refuse to sign the document and Deputy Revels called his supervisor, Sergeant Lucas, who advised that Plaintiff would have to receive a failure to comply disciplinary

4

report if he did not sign.  (Id. ¶ 12.)

Sergeant Lucas instructed Deputy Revels to contact the internal security unit responsible for inmate movements within the GCDC for assistance in moving Plaintiff to the disciplinary unit.  (Id. ¶ 15.)  Deputy Defendant Robert Bailey ("Deputy Bailey") and Defendant Tochi Davis ("Deputy Davis") responded to Deputy Revels' radio call.  (Id.)  Deputy Revels informed Deputies Bailey and Davis that Plaintiff refused to sign some medical paperwork and was thus "being charged with a failure to comply infraction." (Id.)  Deputy Revels did not consider Plaintiff to be resistant or a threat and told Deputies Bailey and Davis that Plaintiff was compliant and not resistant. (Id.)

At the GCDC, standard practice for moving an inmate to the disciplinary unit for failure to comply with an officer's instructions involves instructions to the inmate from the escorting officers to "get down on the floor and put his hands behind his back so that he can be handcuffed."  (Id. ¶ 16.)  The escorting officers then "assist the inmate to his feet and escort him to the assigned destination" at the inmate's pace.  (Id.)  Deputies Bailey and Davis escorted Plaintiff to the disciplinary unit using this protocol, which is designed as a

AO 72A
(Rev.8/82)

security measure to control for the unknown mindset and potential for violence of an inmate.  (Id.)

The County Defendants report that Plaintiff's movement from GCDC's admissions area to the disciplinary area was "completely uneventful."  (Id. ¶ 17.)  The GCDC officers did not direct a use of force towards Plaintiff. Plaintiff complied with the instructions to lie down on the floor without resistance.  Nor did he resist when the officers placed him in handcuffs. Plaintiff's hands were secured behind his back in a manner that was not "rough[], violent[], or aggressive[]."  (Id.)  The escorting officers "used only as much effort as was necessary" to assist Plaintiff to standing.  (Id.)  The escorting officers accompanied Plaintiff, walking backwards and supported by the officers' arms through his, into the elevator and up two floors to the disciplinary unit.  (Id.)  En route to the disciplinary unit, Plaintiff "did not complain that the handcuffs were too tight" or "that he had injured his shoulder."  (Id.)  No use of force incident report was prepared following this transit.  (Id. ¶ 18.)

C.    Policy-making at the GCDC

Defendant R.L. "Butch" Conway ("Sheriff Conway") has held the

6

elected position of Sheriff of Gwinnett County since 1997.  (County Defs.'

SOMF, Dkt. [83-1] ¶ 23.)  In this position, Sheriff Conway "is responsible for

the overall administration of the several divisions of the Sheriff's Office,"

including the GCDC.  (Id. ¶ 24.)  Colonel Don Pinkard, who is the Jail

Administrator and is not named in this action, is "primarily responsible for the

day-to-day operations of the [GCDC] and seeing to it that all [GCDC] policies

are followed."  (Id. ¶ 26.)

Policy 8M governs use of force and restraints in the GCDC (the "Use of

Force Policy").  (Id. ¶ 27.)  The Use of Force Policy provides:

> It will be the policy of the Gwinnett County Detention Center to use only
> that force which is necessary in order to maintain the security and safety
> of all persons, staff, and inmates within the Detention Center.... Any staff
> member who encounters an uncooperative inmate who refuses to enter
> their cell, refuses to be searched, refuses to leave their cell, will follow
> the specific Use of Force Guidelines as currently approved by the
> agency.... Staff members are expected to utilize proxemics and verbal
> skills to the fullest extent possible in any confrontation with inmates.  It
> is the policy of this agency to avoid the necessity of resorting to physical
> confrontations to resolve conflicts with inmates.

(Id.; Ex. D to County Defs.' SOMF, Dkt. [83-3] at 12-14.)

The Use of Force Policy authorizes detention officers to use "certain

levels of force" to ensure that inmates comply with "lawful orders or

7

directions." (County Defs.' SOMF, Dkt. [83-1] ¶ 29.)  For example, when escorting an inmate within the GCDC, detention officers may handcuff inmates and take them by the wrist or arm.  (Id.)  Defendants acknowledge that a detention officer would violate the Use of Force policy if he were to "use force to make an inmate sign a document he had a right to refuse to sign." (Id. ¶ 28.)

The Gwinnett County Sheriff's Office contracts with medical providers, including Corizon Health, to provide medical care to the GCDC's inmates and to document that care.  (Id. ¶ 30.)  The County Defendants state that "Sheriff Conway is not responsible for establishing policies regarding the actual provision of medical care or for providing direct supervision to the medical staff."  (Id.)

At the time of the incident that forms the basis of this case, the GCDC operated under Policy 20.A, issued by the Gwinnett County Jail Commander under authority delegated from the Sheriff.  (Id. ¶ 31, Ex. E to County Defs.' SOMF, Dkt. [83-3] at 15.)  Colonel Donald Pinkard is the Jail Administrator for the GCDC, and is "responsible for insuring that the Sheriff's policies regarding jail operations are carried out."  (County Defs.' SOMF, Dkt. [83-1] ¶ 35.)

With regards to informed consent to medical treatment, Policy 20.A provides in part: "Community standards of informed consent will be observed in inmate care.  Health care will be rendered against an inmate's will only in accordance with legal statute and requirements."  (County Defs.' SOMF, Dkt. [83-1] ¶ 31; Ex. E to County Defs.' SOMF, Dkt. [83-3] at 21.)

The County Defendants state that "Sheriff Conway was not involved with the incident complained of, and given the number of inmates processed through the [GCDC], there was no reason that he would have been informed of the Plaintiff's allegations contemporaneously with the alleged incident." (County Defs.' SOMF, Dkt. [83-1] ¶ 32.)  The GCDC processes approximately 35,000 detainees each year.  (Id. ¶ 25.)

The Medical Defendants and the County Defendants now move for summary judgment.  The Court first lays out the relevant legal standard before considering each motion, in turn.

## I.      Legal Standard – Summary Judgment

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "The moving

party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

10

(11th Cir. 2002).  But, the court is bound only to draw those inferences that are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    Medical Defendants' Motion for Summary Judgment [79]

In the Court's Order dated September 30, 2013, the Court dismissed a number of Plaintiff's claims against the Medical Defendants.  (Order, Dkt. [39] at 21.)  The claims that remain against Defendant Susan Fajardo are (1) First Amendment retaliation claim under 42 U.S.C. § 1983 (Count I of the Second Amended Complaint, Dkt. [40]), (2) state-law battery claim (Count IV), and (3) negligence claim (Count V) insofar as those claims are based on the administration of the PPD test.  The respondeat superior claim (Count VI)

AO 72A
(Rev.8/82)

against Corizon remains, contingent on the state-law tort claims against Nurse Fajardo.

In their Motion for Summary Judgment, the Medical Defendants argue that they are entitled to judgment on Plaintiff's remaining claims because Plaintiff manifested his consent to the administration of the PPD test, and because Plaintiff's claims were brought outside the statute of limitations and do not relate back to the original Complaint.  The Court considers each substantive claim against the Medical Defendants before turning to the statute of limitations argument.

A.    First Amendment Retaliation Claim (Count I)

Plaintiff contends that Nurse Fajardo forcibly administered the PPD test in retaliation for him exercising his First Amendment right to refuse medical treatment.  Defendants move for summary judgment on this claim, arguing that (1) Plaintiff manifested his consent to the PPD test through his conduct towards Nurse Fajardo; (2) administration of a PPD test would not deter a person of ordinary fitness from exercising First Amendment rights; and (3) administration of the PPD test was not motivated by a desire to punish Plaintiff for exercising his First Amendment rights.

12

As the Court noted in its September 30, 2013 Order, the primary issue in this case is whether the test was given against Plaintiff's will in retaliation for Plaintiff refusing medical treatment.  The First Amendment forbids prison officials from retaliating against prisoners for exercising the right to free speech.  Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).  To succeed on a First Amendment retaliation claim, a plaintiff must establish that: (1) he engaged in constitutionally protected speech; (2) he suffered retaliatory conduct that would deter a person of ordinary firmness from engaging in protected speech; and (3) there is a causal connection between the protected speech and alleged retaliation; i.e., retaliatory intent.  Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008).

Defendants first argue that they are entitled to summary judgment because Plaintiff did not engage in constitutionally protected speech in refusing Nurse Fajardo's administration of the PPD test because Plaintiff in fact consented to administration of the test.  The undisputed evidence shows that Plaintiff sat down in Nurse Fajardo's chair and put his arm down, and that Nurse Fajardo wiped Plaintiff's arm with alcohol and injected Plaintiff with a small needle.  The parties dispute, however, whether Nurse Fajardo knew of

13

Plaintiff's earlier verbal and written refusals of treatment.  The parties further dispute whether Plaintiff manifested his consent at the time Nurse Fajardo administered the PPD test.  The Court must construe the facts in favor of Plaintiff as the non-moving party.  And Plaintiff testified that he verbally informed Nurse Fajardo of his refusal of medical treatment.  (Johnson Depo., Dkt. [84-1] at 122.)  Defendant, therefore, is not entitled to judgment on the first element of retaliation–the Court cannot find on this record that Plaintiff manifested his consent to the PPD test such that a reasonable jury could not conclude that Plaintiff did not engage in protected speech.

Defendants next contend that summary judgment is proper because Plaintiff did not suffer retaliatory conduct that would deter a person of ordinary firmness from engaging in protected speech.  Whether the alleged retaliatory conduct " 'would likely deter' presents an objective standard and a factual inquiry."  Smith v. Mosley, 532 F.3d at 1277.  The "retaliatory conduct" alleged here is the administration of the PPD test–which is to say, the insertion of a small needle into Plaintiff's arm.  The record provides insufficient evidence for the Court to conclude whether this conduct meets the objective standard of "would likely deter" protected speech.  Defendants offer that

14

Plaintiff continued to refuse treatment and, so they argue, Plaintiff's speech

was therefore not deterred by Nurse Fajardo's administration of the PPD test.

(Medical Defs.' MSJ Br., Dkt. [79-2] at 14.)  Defendants further argue that

"Plaintiff did not suffer any pain from the shot" (id. at 13), while Plaintiff

offers that he "can't stand needles."  (Johnson Dep., Dkt. [84-1] at 121-23.)

But the evidence offered here focuses on *Plaintiff's* reaction, and Smith

demands that whether the conduct would likely deter speech be evaluated

under an objective standard.  That question is properly left to the jury.

Defendants next move for summary judgment based on the third element

under Smith: the retaliator's subjective intent.  In the Eleventh Circuit, the

subjective motivation issue is evaluated under a burden-shifting formula.

Smith, 532 F.3d at 1278 (citing Thaddeus-X v. Blatter, 175 F.3d 378, 399 n. 14

(6th Cir. 1999); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S.

274 (1977)).  "Once the plaintiff has met his burden of establishing that his

protected conduct was a motivating factor behind any harm, the burden of

production shifts to the defendant.  If the defendant can show that he would

have taken the same action in the absence of the protected activity, he is

entitled to prevail on summary judgment."  Thaddeus-X, 175 F.3d at 399

AO 72A
(Rev.8/82)

(citation omitted).  The Court assumes for the purposes of this analysis only that Plaintiff could meet his burden.  The burden then shifts to Defendants, who provide evidence that every detainee who passes through the GCDC is tested for tuberculosis.

The record does establish that Plaintiff would have been tested for tuberculosis regardless of whether he initially refused the PPD test. But this conclusion does not compel a finding for the Medical Defendants, because Nurse Fajardo's testimony reveals that alternative procedures are available for detainees who refuse the PPD test.  (Fajardo Dep., Dkt. [88] at 17, 46.)  Those detainees may be held in a "negative pressure cell" and given a chest x-ray to check for the presence of active tuberculosis.  (Id. at 46.)  The Medical Defendants have not shown that they would have taken *the same action*–that is, a PPD test–in the absence of Plaintiff's refusal.  Accordingly, the Medical Defendants are not entitled to summary judgment on the First Amendment retaliation claim, and their motion is **DENIED** as to Count I.

B.    State-law Battery Claim (Count IV)

Next, Plaintiff contends that Nurse Fajardo's administration of the PPD test constituted a battery under Georgia law. Well-settled Georgia law provides

16

that a physician may be guilty of battery where he treats a patient without

express or implied consent.  <u>Mims v. Boland</u>, 110 Ga. App. 477, 481 (1964).

But "consent to the act by the person affected negates the contact as an

actionable tort."  <u>Id.</u> at 482.  Consent may be expressed orally, in writing, or

through the patient's actions or conduct.  <u>Id.</u>  Consent "may be implied from

voluntary submission to treatment with full knowledge of what is going on."

<u>Id.</u>  The Court found above that, in this case, the question of whether Plaintiff

manifested his consent to the PPD  presents an issue of fact for the jury.

Accordingly, the Medical Defendants' Motion for Summary Judgment is

**DENIED** as to Count IV.

  C. <u>Negligence Claim (Count V)</u>

  In his final claim against Nurse Fajardo, Plaintiff contends that Nurse

Fajardo's administration of the PPD test constituted negligence under Georgia

law.  Plaintiff bases his negligence claim on O.C.G.A. § 51-1-27, which

provides recovery in tort for negligence of a medical professional.

A plaintiff alleging medical negligence must establish three (3) essential

elements: "(1) the duty inherent in the doctor-patient relationship; (2) the

breach of that duty by failing to exercise the requisite degree of skill and care;

17

and (3) that this failure was the proximate cause of the injury sustained.

Negligence alone is insufficient to sustain recovery.  It must be proven that the

injury complained of proximately resulted from such want of care or skill.  A

bare possibility of such result is not sufficient." Goggin v. Goldman, 209 Ga.

App. 251, 252 (1993) (internal citations and quotations omitted).

The standard of care required of a medical professional "is that employed

by the medical profession generally and not what one individual [professional]

thought was advisable or would have done under the circumstances." McNabb

v. Landis, 223 Ga. App. 894, 895 (1996).   "Any injuries resulting from a want

of such care and skill shall be a tort for which a recovery may be had."

O.C.G.A. § 51-1-27.  The medical malpractice statutes apply to nurses as well.

See McDowell v. Brown, 392 F.3d 1293 (11th Cir. 2004).

Expert testimony establishes the relevant standard of care.  A federal

court applying Georgia law as it pertains to medical malpractice actions must

first ask whether the proffered expert "is qualified to render an opinion

regarding the standard of care." McDowell, 392 F.3d at 1295.  Plaintiff argues

that Nurse Fajardo is competent to testify as to the standard of care.  (Pl.'s

Resp., Dkt. [85] at 10.)  The Court does not undertake that inquiry at this

18

juncture, and nothing in this Order should be read to conclude that Nurse Fajardo is competent to provide expert testimony.  But, because Nurse Fajardo's own testimony indicates that she believes she would have breached the standard of care if she had administered the PPD test without Plaintiff's consent (see Fajardo Dep., Dkt. [88] at 20), the Court cannot award the Medical Defendants summary judgment.  Nurse Fajardo apparently concedes that administration of the PPD without consent would be a breach of the standard of care; whether Plaintiff consented is a question for the jury.  Accordingly, the Medical Defendants' Motion for Summary Judgment is **DENIED** as to the negligence claim in Count V.

D.   Respondeat Superior Claim (Count VI)

Because state-law tort claims remain against Nurse Fajardo, the Medical Defendants' Motion for Summary Judgment is **DENIED** with respect to the Respondeat Superior claim against Corizon enumerated in Count VI.

E.   Statute of Limitations

The Medical Defendants move for summary judgment on all counts on the alternative grounds that Plaintiff's claims are barred by Georgia's statute of limitations.  The Medical Defendants concede that Plaintiff filed the Complaint

19

within the applicable two-year statute of limitations.  (Medical Defs.' MSJ Br.,

Dkt. [79-2] at 20.)  Their argument for summary judgment is instead based on

Plaintiff's alleged failure to effectuate service.

The Federal Rules of Civil Procedure provide that a plaintiff must effect

service within 120 days of filing his complaint.  FED. R. CIV. P. 4(m).  Georgia

law, however, requires service within five days.  O.C.G.A. § 9-11-4(c).  The

Medical Defendants argue that, because Plaintiff did not effectuate service

within five days of filing the Complaint, his claims are barred.

Under Georgia law, merely filing an action does not toll the statute of

limitations.  Rather, service of process must be perfected in order to toll the

statute.  "If service is perfected within five days of filing the complaint, even

though the statute of limitations has run before service is perfected, service will

relate back." Cambridge Mut. Fire Ins. Co. v. City of Claxton, Ga., 720 F.2d

1230, 1233 (11th Cir. 1983) (citing Hilton v. Maddox, Bishop, Hayton Frame

& Trim Contractors, Inc., 125 Ga. App. 423, 427 (1972)).  "If, however, service

is perfected more than five days after the filing of the complaint and after the

statute of limitations has run, service will relate back only if the plaintiff

diligently attempted to perfect service." Id. (citing Webb v. Murphy, 142 Ga.

20

App. 649 (1977); <u>Bible v. Hughes</u>, 146 Ga. App. 769, 770 (1978); <u>Hilton</u>, 125

Ga. App. at 426.  The Medical Defendants argue that Plaintiff did not act

diligently, because he mailed waivers of service to the Medical Defendants on

March 13, 2013, more than three weeks after filing his Complaint. (Medical

Defs.' MSJ Br., Dkt. [79-2] at 20.)

 As the court in <u>Tillman v. Georgia</u> noted, the Medical Defendants'

seemingly simple contention that Plaintiff's state-law claims are barred by the

statute of limitations "opens a Pandora's box of procedural specters."  466 F.

Supp. 2d 1311 (S.D. Ga. 2006) (Edenfield, J.).  Here, as in that case, the

Court's jurisdiction is "mixed"–federal question jurisdiction under 28 U.S.C.

§ 1331 for Plaintiff's Section 1983 claims, and supplemental jurisdiction under

28 U.S.C. § 1367 for Plaintiff's pendent state-law battery and negligence

claims.

 In <u>Tillman</u>, the court for the Southern District of Georgia engaged in a

detailed analysis of the interplay between statutes of limitations and the state

and federal service provisions, as required by <u>Erie Railroad Co. v. Tompkins</u>,

304 U.S. 64 (1938).  The <u>Erie</u> doctrine requires district courts to apply state

law, "*[e]xcept* in matters governed by the Federal Constitution or by acts of

Congress."  Erie R. Co., 304 U.S. at 78 (emphasis added).  In diversity

jurisdiction cases, Erie and its progeny require a district court to apply the

substantive law of the forum state alongside federal procedural law.  Horowitch

v. Diamond Aircraft Indus., Inc., 645 F.3d 1254, 1257 (11th Cir. 2011).  The

interplay between Georgia's statutes of limitations and service requirements

implicates the Erie doctrine, because these provisions are substantive for Erie

purposes.  Cambridge Mut. Fire Ins. Co., 720 F.2d at 1232 (citing Guaranty

Trust Co. v. York, 326 U.S. 99 (1945) (holding that state statutes of limitations

are substantive laws); Ragan v. Merchants Transfer & Warehouse Co., 337

U.S. 530 (1949) (holding that a state statute, providing for commencement of a

suit upon service of process, was an integral party of the state statute of

limitations)).   All of Plaintiff's claims against the Medical Defendants are

governed by Georgia's two-year statute of limitations codified at O.C.G.A. § 9-

3-33.[3]

        The Tillman court found–and this Court agrees–that the Erie doctrine

_____

        [3]  Section 1983 claims "borrow" the statute of limitations from the state where
the action has been brought.  Owens v. Okure, 488 U.S. 235, 239-40 (1989); McNair
v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008).  In Georgia, the governing limitations
period is two years.  Porter v. Ray, 461 F.3d 1315, 1323 (11th Cir. 2006).

governs the applicable law in the type of case presented here: federal question jurisdiction with supplemental state law claims.  Tillman, 466 F. Supp. 2d at 1314.  See also Jackson v. BellSouth Telecommc'ns, 372 F.3d 1250, 1274-75 (11th Cir. 2004) ("we are *Erie*-bound to apply Florida law in evaluating plaintiffs' supplemental state-law claims").  Similarly, the Court agrees with the Tillman court that the Federal Rules' service of process requirement applies, and not Georgia's state rule providing a shorter service of process period.  466 F. Supp. 2d at 1321.  Accordingly, the timeliness of Plaintiff's service is controlled by Rule 4, which allows Plaintiff 120 days after filing to serve his Complaint.  FED. R. CIV. P. 4(m).  Plaintiff complied with that provision, and thus the statute of limitations cannot serve as a basis for awarding the Medical Defendants summary judgment.  The Medical Defendants' Motion for Summary Judgment is therefore **DENIED**.

### III.   County Defendants' Motion for Summary Judgment [83]

The Court now turns to the County Defendants' Motion for Summary Judgment [83].  The claims against Deputy Revels, Deputy Bailey, and Deputy Davis are Section 1983 claims for First Amendment retaliation (Count I) and Fourteenth Amendment excessive force (Count II), a state-law battery claim

23

(Count IV), and a state-law negligence claim (Count V).  Plaintiff also brings a

Section 1983 supervisory liability claim against Sheriff Conway (Count III).

The County Defendants move for summary judgment on grounds that

Defendants did not subject Plaintiff to unconstitutionally excessive force and

did not deprive Plaintiff of any constitutionally protected rights.  (County

Defs.' MSJ, Dkt. [83].)  Additionally, Sheriff Conway moves for summary

judgment on grounds that he did not personally participate in the alleged

incident, and bears no responsibility for any custom or policy that caused

Plaintiff's alleged injury.  The County Defendants also move for summary

judgment on immunity grounds: qualified immunity for Plaintiff's federal

claims, and official immunity for Plaintiff's state law claims.  The Court begins

by considering Defendants' immunity arguments.

A.      Qualified Immunity

The Court outlines each federal claim against the County Defendants,

before turning to the qualified immunity analysis. Plaintiff claims that Deputy

Revels, Deputy Bailey, and Deputy Davis violated his freedom of speech under

the First Amendment and his "right to privacy under the Ninth Amendment"

when they "retaliate[d] against him for refusing to consent to treatment."  (2d

24

Am. Compl., Dkt. [40] ¶ 57.)  Defendants move for summary judgment on this claim, arguing that (1) Plaintiff's refusal of the PPD test does not fall within the realm of constitutionally protected speech and (2) Defendants' actions in escorting Plaintiff to the disciplinary unit were not causally connected to Plaintiff's allegedly protected speech.   Additionally, Defendants claim that Plaintiff has provided nothing more than a conclusory allegation that his "right to privacy" was violated and Defendants are therefore entitled to summary judgment based on the lack of evidence in the record supporting Plaintiff's claim under the Ninth Amendment.

As an initial matter, the Court agrees that Plaintiff's Ninth Amendment claim is unsupported by evidence in the record.  A reasonable jury could not find for Plaintiff on the evidence presented.  Accordingly, the County Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's privacy claim.

The doctrine of qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities.  Wilson v. Layne, 526 U.S. 603, 609 (1999).  Officials are shielded "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "To receive qualified

immunity, a government official first must prove that he was acting within his

discretionary authority."  Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir.

2003).  For the Section 1983 claims here, the parties do not dispute that

Defendants were acting within the scope of their discretionary authority.  Once

the government official has satisfied this initial burden, the burden shifts to the

plaintiff to show that the official is not entitled to qualified immunity.  Id. at

1358.

Whether an official is entitled to qualified immunity is determined by a

two-step inquiry:  One inquiry is "whether the plaintiff's allegations, if true,

establish a constitutional violation."  Barnett v. City of Florence, 409 F. App'x

266, 270 (11th Cir. 2010) (citing Hope v. Pelzer, 536 U.S. 730, 736 (2002)).

"If the facts, construed . . . in the light most favorable to the plaintiff, show that

a constitutional right has been violated, another inquiry is whether the right

violated was 'clearly established.' "  Id. (citing Saucier v. Katz, 533 U.S. 194,

201 (2001)).  "Both elements of this test must be present for an official to lose

qualified immunity, and this two-pronged analysis may be done in whatever

order is deemed most appropriate for the case." Id. (citing Pearson v. Callahan, 555 U.S. 223, 241 (2009)).  The Court first examines the substantive constitutional questions.

### 1.   First Amendment Retaliation Claim

Turning to Plaintiff's First Amendment retaliation claim, as discussed *supra* at Part II.A, a plaintiff must establish three elements to prevail on such a claim: constitutionally protected speech, retaliatory conduct, and a causal connection.  Smith, 532 F.3d at 1276.  With respect to Plaintiff's claim against Deputy Revels, Deputy Bailey, and Deputy Davis, the Court finds that Plaintiff cannot prevail on the third element, the requisite causal connection between Plaintiff's allegedly protected speech and the alleged retaliation.

Plaintiff alleges that the Deputies subjected him to "retaliatory force" when they escorted him to the disciplinary unit following his refusal to consent to medical treatment.  (2d Am. Compl., Dkt. [40] ¶ 56.)  But the evidence in the record shows that the Deputies believed that Plaintiff was non-compliant because he had refused to sign "medical paperwork" *after* the administration of the PPD test.  (Revels Depo., Dkt. [90] at 7-9, 32; Davis Depo., Dkt. [95] at 22.)  Indeed, the evidence shows that the Deputies had no knowledge of

27

Plaintiff's prior refusal of the PPD test–the speech that forms the basis of Plaintiff's First Amendment claim.  (Revels Depo., Dkt. [90] at 32.)  Rather, Deputy Bailey simply believed he was dealing with an inmate who had not complied with an officer's instructions.  (Bailey Depo., Dkt.[94] at 30-31.) Deputy Davis testified to being aware of Plaintiff's refusal to sign "a medical form" (Davis Depo., Dkt. [95] at 22), but Plaintiff provides no evidence to indicate that the Deputies were aware of Plaintiff's refusal to consent to medical treatment.  Based on the Deputies' testimony, Defendants argue that the Deputies' motivation was to follow their supervisor's instructions, not to retaliate against Plaintiff.  Plaintiff provides no evidence to the contrary.  A reasonable jury, therefore, could not conclude that Defendants possessed the necessary retaliatory intent.  Accordingly, Defendants are entitled to qualified immunity because they did not commit a constitutional violation.  The County Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's First Amendment claim.

> 2.   *Fourteenth Amendment Excessive Force Claim*

Plaintiff claims that the County Defendants used excessive force in transferring him to the disciplinary unit.  "Claims involving the mistreatment of

arrestees or pretrial detainees in custody are governed by the Fourteenth

Amendment's Due Process Clause, instead of the Eighth Amendment's Cruel

and Unusual Punishment Clause, which applies to such claims by convicted

prisoners." Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1196 (11th Cir.

2003) (quoting Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996)).  "As

a general rule, to prevail on a claim of a substantive due-process violation, a

plaintiff must prove that a defendant's conduct 'shocks the conscience.' " Id.

(quoting Nix v. Franklin Cnty. School Dist., 311 F.3d 1373, 1375 (11th Cir.

2002)).

    A government official's use of force is excessive under the Eighth or

Fourteenth Amendments[4] only if it "shocks the conscience." Fennell v.

Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009).  "The use of force does not

'shock the conscience' if it is applied in a good-faith effort to maintain or

restore discipline." Id. (internal quotation marks and citation omitted).  If,

however, the use of force is applied "maliciously and sadistically to cause

harm, then it does 'shock the conscience,' and is excessive under the Eighth or

---

    [4] Excessive force claims under the Fourteenth Amendment are analyzed in the
same manner as Eighth Amendment excessive force claims.  Fennell, 559 F.3d at
1216 n.5.  Thus, both Eighth and Fourteenth Amendment cases are instructive here.

Fourteenth Amendments." Id. (internal quotes and citation omitted).  "[O]nly the most egregious official conduct will be the sort of abusive executive action that can be sufficiently arbitrary for constitutional recognition as a potentially viable substantive due process claim." Carr v. Tatangelo, 338 F.3d 1259, 1271 (11th Cir. 2003) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)) (internal quotation marks omitted).  "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Lewis, 523 U.S. at 849.

In determining whether force was applied maliciously and sadistically to cause harm, the Eleventh Circuit considers the totality of the circumstances in determining whether the amount of force used is obviously excessive. Neal v. Fulton Cnty. Bd. of Educ., 229 F.3d 1069, 1075 (11th Cir. 2000).  In particular, the Court has examined: (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted. See, e.g., Fennell, 559 F.3d at 1217 (applying these factors in the prison context); Neal, 229 F.3d at 1076-77 (applying these factors in the classroom disciplinary context).

In the Eleventh Circuit, "whether or not a prison guard's application of

force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). The County Defendants state that the Deputies placed Plaintiff in handcuffs and pulled him up to standing by his arms in order to escort Plaintiff to the disciplinary unit in the manner prescribed by jail policy in order to maintain order and officer safety. Plaintiff testified that the Deputies handcuffed Plaintiff "so tightly that his hands felt numb," bent his arms "all the way back," bent his wrist, and dragged him across the floor. (Pl.'s Br. in Opp'n to County Defs.' MSJ, Dkt. [91] at 5.) Even construing any ambiguity in the facts in Plaintiff's favor, considering the totality of the circumstances, the Court cannot conclude that Defendants maliciously and sadistically used force for the very purpose of causing harm.

Plaintiff argues that any use of force in his circumstances was excessive because he was "compliant" and "not resistant." (County Defs.' SOMF, Dkt. [83-1] ¶¶ 15, 17.) The Eleventh Circuit, however, has permitted using force even absent physical resistance. See Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990) (holding it was not unreasonable for a guard to grab a prisoner

by the throat and shove him against the prison bars after failing to follow the guard's instructions and shouting obscenities).  Thus, the fact that Plaintiff was not physically resisting Defendant does not automatically render any force used unconstitutional.

Because the County Defendants' actions did not shock the conscience, they did not commit a constitutional violation and are therefore entitled to qualified immunity.  Accordingly, the County Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's Fourteenth Amendment claim.

B.    Official Immunity

Plaintiff brings state-law claims for battery and negligence.  The County Defendants move for summary judgment with respect to these claims on the basis of official immunity.

The state constitutional provision governing official immunity provides as follows:

> [A]ll officers or employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the

> performance of their official functions.  Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.

GA. CONST. art. I, § 2, ¶ 9(d).  The Supreme Court of Georgia has held that the term "official functions" refers to "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994).  Accordingly, under this definition, the constitutional provision "provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure." Id.  "It however, does provide immunity for the negligent performance of discretionary acts . . . ." Id.  In sum, under Georgia law, "a public officer or employee may be personally liable only for ministerial acts negligently performed or discretionary acts performed with malice or intent to injure." Harvey v. Nichols, 581 S.E.2d 272, 276 (Ga. Ct. App. 2003).

Whether an act is ministerial or discretionary depends on the nature of the act and not the actor's position. Id. at 380.  "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or

proved to exist, and requiring merely the execution of a specific duty." Id.  By contrast, a discretionary act "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id.

As a threshold matter, the Court finds that Defendants' duties at the GCDC were discretionary because they called for the exercise of personal deliberation and judgment.  Thus, Defendants can only be held liable under state law if Plaintiff can show that they acted with actual malice.

For purposes of official immunity, " 'actual malice' requires a deliberate intention to do wrong, and denotes express malice or malice in fact.  It does not include willful, wanton or reckless conduct or implied malice.  Thus, actual malice does not include conduct exhibiting a reckless disregard for human life." Daley v. Clark, 638 S.E.2d 376, 386 (Ga. Ct. App. 2006).  Moreover, "evidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity." Selvy v. Morrison, 665 S.E.2d 401, 406 (Ga. Ct. App. 2008) (internal quotation marks and citation omitted).  The record is inconclusive on Plaintiff's claims of an injury to his rotator cuff that he alleges stems from this incident.  But even if Defendants' conduct may have

caused an injury, and even if their grabbing Plaintiff by the arms and pulling

him to his feet may have been reckless, the record does not support a

conclusion that Defendants deliberately intended to cause Plaintiff bodily

harm.  Because Plaintiff cannot show that Defendants acted with actual malice,

Deputy Revels, Deputy Bailey, and Deputy Davis are entitled to official

immunity.  Accordingly, the County Defendants' Motion for Summary

Judgment is **GRANTED** as to Plaintiff's state law battery and negligence

claims.

      C.     Supervisory Liability Claim

      Eleventh Circuit law is well-established that "[s]upervisory officials

cannot be held liable under § 1983 for the unconstitutional actions of their

subordinates based on respondeat superior liability." Gray ex rel. Alexander v.

Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (citing Hartley v. Parnell, 193

F.3d 1263, 1269 (11th Cir.1999)).  "Instead, supervisors can be held personally

liable when either (1) the supervisor personally participates in the alleged

constitutional violation, or (2) there is a causal connection between the actions

of the supervisor and the alleged constitutional violation." Id.  Plaintiff does

not allege that Sheriff Conway personally participated in the administration of

AO 72A
(Rev.8/82)

the PPD test or in his transfer to the disciplinary unit.  Accordingly, Plaintiff

must show that Sheriff Conway is liable under the second method.

   The requisite causal connection can be established when "a history of

widespread abuse puts the responsible supervisor on notice of the need to

correct the alleged deprivation, and he fails to do so."  Hartley v. Parnell, 193

F.3d 1263, 1269 (11th Cir. 1999).  These deprivations "must be obvious,

flagrant, rampant and of continued duration, rather than isolated occurrences."

Id. (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990).)

   There is no evidence in the record of widespread and obvious uses of

excessive force against detainees by guards at the GCDC.  Furthermore, the

evidence presented indicates that Colonel Pinkard–not Sheriff Conway–is

responsible for insuring that the GCDC's written policies are carried out.

Essentially, Plaintiff's claim amounts to one based on respondeat superior,

which cannot form the basis for liability in an action brought under Section

1983.  Monell v. Dept. of Soc. Servs. of New York, 436 U.S. 658, 694 (1978).

Accordingly, the County Defendants' Motion for Summary Judgment is

**GRANTED** as to Plaintiff's supervisory liability claim.

AO 72A
(Rev.8/82)

## Conclusion

In accordance with the foregoing, the Court **DENIES** Defendants

Corizon Health, Inc. and Susan Fajardo, LPN's Motion for Summary Judgment

[79].  The Court **GRANTS** Motion for Summary Judgment on Behalf of

Defendants Sheriff R.L. Conway and Deputies Christopher Revels, Robert

Bailey, and Tochi Davis [83].

The remaining parties shall submit a proposed consolidated pretrial order

within 30 days of the entry of this Order.

**SO ORDERED**, this 6th day of July, 2015.

_____

**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)